The STATE of Ohio, Appellee,

v.

WARREN, Appellant.

[Cite as *State v. Warren* (1995), 106 Ohio App.3d 753.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–950131.

Decided Oct. 11, 1995.

754

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Ronald W. Springman, Jr.,* Assistant Prosecuting Attorney, for appellee.

*Mark Tillar,* for appellant.

---

HILDEBRANDT, Judge.

Defendant-appellant, Ray Warren, appeals from the judgment of the Hamilton County Municipal Court, after a bench trial, in which he was convicted of domestic violence, as proscribed by R.C. 2919.25(A). Appellant advances the following three assignments of error: (1) the trial court erred by denying appellant's right to confront the prosecuting witness by precluding cross-examination on the issue of bias, prejudice or ulterior motives; (2) the evidence is insufficient to support a conviction; and (3) the judgment is against the manifest weight of the evidence. Finding no merit in appellant's assignments of error, we affirm the trial court's judgment.

R.C. 2919.25 provides:

"(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.

"* * *

"(E) As used in this section and sections 2919.251 and 2919.26 of the Revised Code:

"(1) 'Family or household member' means any of the following:

"(a) Any of the following who is residing or has resided with the offender:

"(i) A spouse, a person living as a spouse, or a former spouse of the offender."

R.C. 2901.01(C) defines "physical harm" as:

"any injury, illness, or other physiological impairment, regardless of its gravity or duration."

The record discloses that the evidence presented below was, in certain respects, controverted. The following facts, however, are undisputed. At the time of the alleged incident of domestic violence, appellant and the complaining witness, Traci Taylor, had been separated for approximately one month after a marriage of seven years. The couple had one child, which appellant had been

caring for during Taylor's recuperation following breast-enhancement surgery.[1] Appellant resided with the minor child during that time at the marital residence, a mobile home located behind the residence of Taylor's mother.

The testimony at trial disclosed that during the early morning hours of January 4, 1995, Taylor arrived at the marital residence at which appellant and the minor child were present and slept on a couch with the child. Taylor testified that later that morning, when she attempted to remove the child from the mobile home because of a continuing problem with high levels of carbon monoxide there caused by a faulty furnace, appellant barred her from leaving. During the ensuing altercation appellant struck Taylor three times in the area of her left breast. Taylor claimed that the blows to her chest aggravated a preexisting back injury.[2]

Taylor then fled from the marital residence to the home of her mother and telephoned the sheriff's office. Deputy Paul Hicks testified that when he responded to Taylor's call, she told him that appellant had pushed and choked her and she complained of back pain. He observed that Taylor was upset and that she had bruises on her neck. Deputy Hicks offered to take Taylor to the hospital, but she declined, stating that she would find her own way.

Appellant testified that, on the day of the events *sub judice*, Taylor returned to the marital residence at about midnight, after being away for six weeks, and spent the night on the couch with the child. In the morning, while appellant prepared the child for school, Taylor began screaming her displeasure about the fact that appellant and her mother had initiated custody proceedings for the child. Taylor attempted to jerk the child from appellant as he held him. Thereafter, she grabbed her chest and stated that appellant was "going to jail." Appellant denied hitting Taylor.

At the conclusion of the bench trial, the trial court found appellant guilty of domestic violence and sentenced him to one hundred eighty days of incarceration. The trial court suspended the sentence and placed appellant on probation with the condition he begin counseling. The court also fined appellant $100. Appellant appeals that judgment.

■ As noted above, appellant's first assignment of error attacks the trial court's failure to permit appellant to cross-examine Taylor on the issue of possible

---

1. The record is not clear concerning whether the child was born the issue of this marriage. Taylor testified that appellant is not the child's father. Appellant, however, referred to the child as his son.

2. Taylor testified that she was "ten percent permanently disabled with my back."

bias stemming from appellant's custody action in regard to the child. The trial court sustained the state's objections to this inquiry.[3]

■   The Confrontation Clause of the Sixth Amendment, which is secured in both state and federal criminal prosecutions, guarantees a defendant the right to confront witnesses against him. *Delaware v. Van Arsdall* (1986), 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674, 683. The purpose of this right is to allow the defendant the opportunity to cross-examine those witnesses. *Id.* It is imperative in our judicial system that cross-examination of a prosecuting witness be allowed, subject to the broad discretion of the court,[4] in order to explore the witness's credibility, especially his or her motivation in testifying. *Davis v. Alaska* (1974), 415 U.S. 308, 316–317, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353–354. See Evid.R. 611(B); *State v. Cooley* (Oct. 19, 1994), Hamilton App. No. C–930644, unreported, 1994 WL 570254. "A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." *Davis v. Alaska, supra,* 415 U.S. at 316, 94 S.Ct. at 1110, 39 L.Ed.2d at 354.

Furthermore, "[t]he focus of the prejudice inquiry in determining whether the confrontation right has been violated must be on the particular witness, not on the outcome of the entire trial." *Delaware v. Van Arsdall, supra,* 475 U.S. at 680, 106 S.Ct. at 1435, 89 L.Ed.2d at 683–684. A violation occurs when a defendant demonstrates "he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the fact from which jurors * * * could appropriately draw inferences relating to the reliability of the witness.'" *Id.* at 680, 106 S.Ct. at 1436, 89 L.Ed.2d at 684, quoting *Davis v. Alaska, supra,* 415 U.S. at 318, 94 S.Ct. at 1111, 39 L.Ed.2d at 355.

The Ohio Supreme Court has recognized the importance of allowing a defendant to explore a prosecution witness's motivation in *State v. Ferguson* (1983), 5 Ohio St.3d 160, 5 OBR 380, 450 N.E.2d 265, wherein the court held in paragraph three of the syllabus:

---

3. Appellant was able to establish the existence of the custody proceedings during his direct testimony. However, the issue under the first assignment of error concerns appellant's right to confront the alleged victim as to any bias or prejudice on her part as a result of the appellant's custody action.

4. Reasonable limits on cross-examination may be imposed based on concerns about such areas as "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall, supra,* 475 U.S. at 679, 106 S.Ct. at 1435, 89 L.Ed.2d at 683.

"An accused is permitted to cross-examine the prosecuting witness as to the witness' pending or contemplated civil action against the accused, in order to demonstrate any possible bias or prejudice arising out of the witness' financial interest in the outcome of the prosecution."

While *Ferguson* involved the right of a defendant to establish during cross-examination of the victim that she had consulted a law firm concerning bringing a civil action against the defendant's former employer as a result of her alleged rape by the defendant—a pecuniary motivation—we believe the court's reasoning to be applicable to the case at hand, where Taylor, the alleged victim of domestic violence, and appellant are engaged in a custody battle and appellant brought proceedings against her. As the court explained, quoting *State v. Doughty* (Me.1979), 399 A.2d 1319, 1323:

" 'The general rule is that the pendency of a civil action brought against an accused by a witness in a criminal case is admissible as tending to show interest and bias of the witness to prove a motive to falsify, exaggerate or minimize on his part, in other words, to support a claim that such witness' testimony may be false or inaccurate, intentionally or otherwise. Such evidence may be introduced in cross-examination. * * *

" 'The rule has been extended to the situation where no civil action has been commenced, but such a suit is or may be contemplated, as in the case of consultation with, or the hiring of, an attorney.' See, also, *People v. Richmond* (1971), 35 Mich.App. 115, 192 N.W.2d 372, and cases compiled in Annotation, 98 A.L.R.3d (1980) 1060, Sections 3(b) and 5(b)." *Ferguson,* 5 Ohio St.3d at 166, 5 OBR at 385–386, 450 N.E.2d at 270. See, also, Evid.R. 611(B) and 616.

■ As we observed above, appellant's attempt to establish how, if at all, his custody action affected Taylor's motivation, bias or prejudice in regard to the instant offense was thwarted by the trial court's sustaining of the state's objections to that line of questioning. Following the authority cited above, we hold that the trial court erred by foreclosing that line of inquiry. Our analysis, however, does not end at this point. We must next determine whether the trial court's refusal to allow cross-examination of Taylor on the issue of the appellant's filing for custody was harmless beyond a reasonable doubt. *Delaware v. Van Arsdall, supra.* The beneficiary of all but a limited category of constitutional errors must prove "beyond a reasonable doubt that the error complained of did not contribute to the [judgment] obtained." *Chapman v. California* (1967), 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710.

As explained by the United States Supreme Court in the context of preclusion of cross-examination of bias:

"The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and of course, the overall strength of the prosecution's case." *Delaware v. Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438, 89 L.Ed.2d at 686–687.

Under the facts of this case, assuming that the trial judge was aware of the damaging potential of Taylor's precluded cross-examination testimony, we conclude that the error was harmless. We do not question that Taylor's testimony was important to the prosecution's case because she and appellant were the only witnesses to the alleged domestic violence, or that it was not cumulative as two versions of the altercation were presented. Taylor's testimony about the altercation, however, was corroborated by the testimony of the police officer, whom she had called to the scene. He testified that she appeared upset and reported that appellant had pushed her and choked her over an argument about who was going to keep the child for the day. He observed bruises around her neck. Taylor's testimony included the statement that she had bruises on her neck. The only contradictory evidence was the testimony of appellant, who testified that he did not strike her.

Appellant testified that Taylor assaulted him. The police officer could not remember if appellant reported being struck by Taylor or whether he observed any marks on appellant.

Appellant was allowed to cross-examine Taylor concerning her karate expertise, her visit to the hospital following the altercation, her attempt to grab the child from appellant and her version of the ensuing altercation, and whether she had struck herself and called the police to report it. From the above, we conclude that the prosecution's case was such that the preclusion of the cross-examination of Taylor concerning appellant's filing of the custody matter did not contribute to appellant's conviction. Therefore, we conclude that the limitation of the cross-examination of Taylor was harmless error beyond a reasonable doubt.

█ We also find no merit in appellant's second argument that the trial court erred by not allowing Taylor's mother to testify as to whether Taylor has faked injuries and reported them to the police in the past. Contrary to what appellant asserts, this testimony has nothing to do with Taylor's bias or motivation to

testify concerning the alleged incident of domestic violence. Accordingly, appellant's first assignment of error is overruled.

In his second assignment of error, appellant maintains that there was insufficient evidence adduced at trial to support his conviction for domestic violence. In light of the elements of domestic violence we set forth *supra*, and the evidence adduced at trial, we overrule this assignment of error on the authority of *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132, in which the court held in the syllabus:

"A reviewing court will not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt."

■ Appellant's third assignment of error challenges his conviction for domestic violence as being against the manifest weight of the evidence. He argues that because the state's evidence consisted only of Taylor's testimony and no evidence was presented that appellant caused the bruises observed on Taylor's neck by Officer Hicks, the trial court's judgment was against the weight of the evidence.

■ In a review of a claim that the judgment is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that appellant's conviction must be overturned and a new trial ordered. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 218–219, 485 N.E.2d 717, 720. The weight to be given the evidence and the credibility of the witnesses are primarily left to the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. It is only when the evidence weighs heavily against conviction that we should exercise our discretion and grant a new trial. *Tibbs v. Florida* (1982), 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652.

We cannot say that the evidence in the record weighed heavily against conviction where the evidence presented in the record consisted primarily of conflicting testimony, and the trial court, as the trier of fact, believed the testimony of Taylor that she had been physically abused by appellant and the corroborating testimony of Officer Hicks that he had observed bruises on her neck. Thus, appellant's third assignment of error is overruled.

Accordingly, the judgment of the Hamilton County Municipal Court is affirmed.

*Judgment affirmed.*

SUNDERMANN, J., concurs.

PAINTER, J., dissents.

PAINTER, Judge, dissenting.

I agree with the majority that the exclusion of the impeachment testimony was error. However, I believe that the Ohio Supreme Court has ruled that the exclusion of this type of evidence is an abuse of discretion requiring reversal. In *State v. Ferguson* (1983), 5 Ohio St.3d 160, 5 OBR 380, 450 N.E.2d 265, the court specifically addressed the *Chapman v. California* issue and stated that "we are unwilling to hide behind the doctrine of harmless error when the determination that error has been committed is inescapable." *Ferguson*, 5 Ohio St.3d at 166, 5 OBR at 386, 450 N.E.2d at 270, fn. 5. Thus, the Ohio Supreme Court has ruled on this issue, and we should follow the law of Ohio, which requires us to reverse and remand for a new trial.