OPINION
Dale Wolff is employed by Coffey's Body Shop and Towing Service as a night dispatcher. Coffey's has a rectangular lot, surrounded by a six-foot metal fence with barbed wire on top. The lot can hold approximately forty-four cars.
On Tuesday, October 20, 1998 at approximately one A.M., Wolff was working as a dispatcher in the office at Coffey's when he heard a noise outside that sounded like a fence rattling. Without delay, Wolff went outside and heard further sounds, possibly a conversation. He continued to walk in the direction of the noise with his flashlight and radio. Moments later, Wolff saw an individual standing outside the fence surrounding the tow lot. Upon seeing the individual, Wolff immediately contacted the police. Apparently hearing Wolff on his radio, the individual outside the fence ran away from the lot. Wolff was unable to detect if the individual was carrying anything.
Wolff then continued to search the lot for any further unusual activity. Shortly thereafter, Wolff found Kenneth L. Atwater, crouched between a car and the fence inside the lot. Upon inquiring as to his presence there, Atwater began spouting profanities at him. Soon after discovering Atwater, the police arrived. Atwater continued to curse at Wolff and now also at the officers. Once he entered the lot, Officer Pauley handcuffed Atwater and placed him in the police cruiser to read him his rights. Following each line, Atwater cursed at the officer. After being read all of his rights, Atwater told the officer that he "was only in the lot taking a shit."
Officer Pauley and Wolff then surveyed the lot to see if anything was missing or any damage was done. As a result, they found nothing out of place. There were no tears in the fence, nor holes under it. There was nothing lying in the location where Atwater was found, nor anywhere else around the inside or outside of the lot. All of the car doors were closed. However, Wolff advised Officer Pauley that he could not be sure if anything was missing or damaged because he did not have an inventory of the cars on the lot. Thereafter, Officer Pauley and his partner escorted Atwater to the police station. While en route, Atwater continued to use vulgar language toward the officers.
Around eight o'clock in the morning following Atwater's arrest, the owner of Coffey's, Robert Berry, inspected each car in the lot for damage or missing items. Berry compared each car against the inventory card which had been updated during the inventory completed the morning before. Berry discovered that three cars had radios missing and one car was missing rear speakers. Soon after, Berry reported this information to the police.
Later that morning, Detective Angelo Adragna questioned Atwater about his presence at Coffey's. After again being advised of his rights, Atwater told the detective that he and another person had been working on cars earlier in the day. When asked what he was doing at Coffey's, Atwater advised he had nothing else to say and "wanted to see the Judge."
At trial, Atwater objected to all testimony regarding his use of profanity. In addition, he objected to the State's failure to produce the inventory cards testified to by Berry. Further, testimony was elicited from Detective Adragna that no fingerprints were taken at the scene. However, Detective Adragna explained that by the time he had questioned Atwater and Berry had completed his inventory, it would have been pointless to take fingerprints on the vehicles. Atwater also focused on the testimony that approximately twenty employees have keys to this lot and around twelve of them had been on the lot between the inventory on Monday and the inventory on Tuesday.
Atwater was indicted and convicted by a jury of breaking and entering into Coffey's Body Shop and Towing Service. He was thereafter sentenced to twelve months incarceration. Atwater now appeals this judgment raising the following two assignments of error:
 The trial court erred in allowing testimony concerning Atwater's use of profane language at the time of his arrest.
 The jury's verdict was against the manifest weight of the evidence.
After considering the parties' arguments, the record, and applicable law, we find that admission of Atwater's use of profanity was harmless error. We further find that his conviction was not against the manifest weight of the evidence. The judgment of conviction is affirmed.
 I
Atwater argues that the testimony that he used profanity during his arrest was improper character evidence. Evid. R. 404 prohibits admission of character evidence "to prove that the defendant acted in accordance therewith on a particular occasion." Exceptions to this rule are allowed in Evid. R. 404(B) for "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The Supreme Court has established that the purpose of Evid. R. 404 is "to preclude a prejudicial attack on a defendant's character." State v. Smith (1990), 49 Ohio St.3d 137, 140.
Without question, testimony that Atwater used profanity at the time of his arrest does not help prove any of the elements of breaking and entering. These elements are found in R.C. 2911.13, which provides that "[n]o person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense . . . or any felony." Counsel for the State explained in her closing argument that the testimony was offered to show Atwater's purpose in being in the lot that night. While it is true that demonstrating purpose or intent is an exception to the rule prohibiting the admission of character evidence, we fail to see how general use of profanity showed his intent. It follows that the trial court erred in allowing this testimony.
However, a defendant is not entitled to a trial free from all error, but instead, a trial free from prejudicial error. State v. Brown (1992), 65 Ohio St.3d 483, 485. In order to declare an error harmless, the Court must be able to "declare that it is harmless beyond a reasonable doubt." Id. (citing Chapman v. California (1967), 386 U.S. 18, 22). "Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for a reversal." Id.
This Court has previously addressed admitting the use of profanity by the defendant in State v. Renner (1998), 125 Ohio App.3d 383. Renner was convicted of one count of felonious assault against his ex-girlfriend. Testimony was presented that Renner had used vulgar language throughout his arrest and processing, mainly toward the female arresting officer. The profanity used by Renner was very derogatory toward women. In that case, we held that the admission of evidence was prejudicial error and reversed the conviction. However, Renner is distinguishable from the present case in several ways.
First, the victim in Renner had serious credibility issues. To begin with, her testimony was discredited by a neutral, independent witness. In addition, the physical evidence demonstrated that defendant's version of events was much more probable than the victim's version. Consequently, it is less likely that the jury convicted Renner based solely on the evidence establishing the elements of the crime. Conversely, there are no significant credibility issues with the witnesses involved in the present case, and the physical evidence could easily support a conviction.
Second, as stated above, the profanity Renner used specifically disparaged women, and he was charged with felonious assault of a woman. In light of the lack of physical evidence and questionable credibility of the complaining witness, the use of profanity in derogation of women was highly prejudicial. On the other hand, Atwater used general profanity directed at essentially everyone he encountered from the time he was found in the lot through his trip to the police station. There is no specific connection between Atwater's use of profanity and the crime with which he was charged, breaking and entering.
Third, Renner was charged with two counts of felonious assault, both based on the same disputed testimony of the defendant and the victim. However, the jury only convicted him of one of the counts. This could indicate that the jury simply felt he should be punished, but in any event does not indicate the elements of the crimes were proven by the State. Atwater was only charged with breaking and entering, the crime for which he was convicted.
Finally, the State in Renner basically acknowledged in her opening statement and in response to Defendant's objections that the purpose for presenting testimony about the profanity was to show that Renner had a bad attitude toward women and acted accordingly when committing this crime. This use of character testimony is exactly what Evid. R. 404 prohibits. On the contrary, the State argued below that the evidence of Atwater's profanity was presented to show purpose, as permitted in Evid. R. 404(B). Although we found that this was error, at least the State offered a valid basis for admission of the testimony in this case.
In short, Atwater is an individual who simply used profanity after being caught by the employee and later arrested by the police officers. It is not at all unusual to encounter general profanity in the ordinary course of a criminal case. On the other hand, Renner used language that was directed toward women and was specifically derogatory of women. It was introduced precisely to prove Renner's character trait of his bad attitude toward women. The admission was particularly prejudicial in that case where Renner was charged with assaulting a woman, but with little evidence to support the conviction.
In light of the foregoing discussion, we find that the facts in the present case are distinct from the facts in Renner. It is not reasonable that the admission of the profanity evidence contributed in any way to Atwater's conviction. Therefore, we hereby overrule Atwater's first assignment of error.
 II
When reviewing a claim that the conviction is against the manifest weight of the evidence, the appellate court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Warren (1995), 106 Ohio App.3d 753,760. A verdict should only be overturned in extraordinary situations when evidence weighs heavily against the conviction. State v. Shue (1994), 97 Ohio App.3d 459, 466.
Atwater does not dispute the elements of trespassing by force. He contests the finding that he trespassed with the intent to commit a felony. In order for the State to prove intent, it must make inferences from the surrounding circumstances. State v. Wysinger (Mar. 2, 1990), Lucas App. No. L-89-131, unreported, p. 2. There is a reasonable inference that when a person forcibly enters a dwelling or business, that he has an intent to commit a theft offense, unless the facts and circumstances indicate a different inference. State v. Flowers (1984), 16 Ohio App.3d 313,314. In fact, even if the defendant is apprehended before any additional acts beyond the trespass have occurred, there can be sufficient evidence to convict him of breaking and entering. See Wysinger, supra.
In the present case, Atwater was found inside the tow lot, crouched between a car and the fence at one o'clock in the morning. In order to enter the lot, he must have somehow penetrated a six-foot fence topped with barbed wire. Although there were no items found on or around his person, there was testimony that another individual ran from the scene. The following day, the owner of the tow lot discovered damage and missing items in some of the cars. Atwater's somewhat crude explanation to the police as to his presence in the lot is not sufficient to raise a different inference. There was ample evidence in the record to support Atwater's conviction for breaking and entering.
We find that Atwater's conviction is not against the manifest weight of the evidence and accordingly overrule his second assignment of error.
Based on the foregoing, Appellant's conviction is hereby affirmed.
GRADY, P.J., AND YOUNG, J., concur.
Copies mailed to:
Cheryl A. Ross
Christopher W. Thompson
Hon. Dennis Langer