DECISION AND JOURNAL ENTRY
{¶ 1} Defendant, Robert C. Jones, appeals from the judgment of the Summit County Court of Common Pleas, finding him guilty of attempted aggravated murder and aggravated arson. We affirm.
 {¶ 2} After a jury trial held in March of 2004, Defendant was convicted of one count of attempted aggravated murder, in violation of R.C. 2923.02(A) and 2903.01(B), and one count of aggravated arson, in violation of R.C. 2909.02. On April 12, 2004, the trial court sentenced Defendant to ten years incarceration for his conviction for attempted aggravated murder and five years incarceration for his aggravated arson conviction. The trial court ordered that the sentences run consecutively for a total sentence of fifteen years. Defendant appealed his conviction, presenting one assignment of error for our review.
 ASSIGNMENT OF ERROR
"[Defendant's] convictions were against the manifest weight of the evidence."
 {¶ 3} In his only assignment of error, Defendant maintains that his convictions were against the manifest weight of the evidence. Defendant argues that the testimony against him regarding the arson and attempted murder charges was incredible, and thus, his conviction should be overturned. We disagree.
 {¶ 4} When a defendant maintains that his conviction is against the manifest weight of the evidence,
 "[A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier or fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
 This court may only invoke the power to reverse based on manifest weight in extraordinary circumstances where the evidence presented at trial weighs heavily in favor of a defendant. Id. Absent extreme circumstances, an appellate court will not second-guess determinations of weight and credibility. Sykes Constr. Co. v. Martell (Jan. 8, 1992), 9th Dist. Nos. 15034 and 15038, at 5-6.
 {¶ 5} Upon a careful review of the record, and upon viewing the evidence in the light most favorable to the prosecution, this Court cannot conclude that the jury lost its way and created a manifest miscarriage of justice when it found Defendant guilty of attempted aggravated murder and aggravated arson. See Otten, 33 Ohio App.3d at 340.
 {¶ 6} Defendant was convicted of attempted aggravated murder in violation of R.C. 2923.02(A) and 2903.01 (B). R.C. 2923.02(A) defines attempt and provides that: "[n]o person, purposely or knowingly * * * shall engage in conduct that, if successful, would constitute or result in the offense." R.C. 2903.01(B) states that: "[n]o person shall purposely cause the death of another * * * while committing or attempting to commit * * * aggravated arson, [or] arson[.]" Defendant was also convicted of aggravated arson under R.C. 2909.02(A)(1) which provides that: "[n]o person, by means of fire or explosion, shall knowingly * * * [c]reate a substantial risk of serious physical harm to any person other than the offender[.]"
 {¶ 7} Kenneth Brown, (Brown) and Defendant met in a treatment facility in 1996. Since their meeting, Brown occasionally would stay at Defendant's house when he needed a place to sleep. Brown had gone to Defendant's house on September 10, 2003. Defendant told him that if he wanted to stay to go upstairs because his landlord was looking for him to try to evict him. Brown testified that he went upstairs to go to sleep while Defendant had gone out.
 {¶ 8} After leaving his house, Defendant went to 435 East Thorton Street, a few blocks away, to ask for some money. Samantha Peach (Ms. Peach), two of her roommates, and a neighbor were outside on their porch at East Thorton smoking cigarettes when Defendant approached them. Ms. Peach testified that "[Defendant] came up to our porch and asked us for a quarter because he wanted to set his roommate on fire." They responded that they did not have any money. She stated that "[h]e was kind of acting like he was drunk, just a little crazy * * * [w]e didn't know what to think. * * * He didn't act like he was being serious at the time, so we didn't think anything of it." About an hour later, Ms. Peach stated that Defendant returned and he "had a gas can in his hand and said he was going to do it, that he got the gas[.]" Defendant then asked them "for a last cigarette before he went to jail because he was going to do it." Approximately 15 minutes later, Ms. Peach testified that she heard sirens and then saw Defendant run by their house.
 {¶ 9} Vanessa Ware, (Ms. Ware) one of Samantha Peach's roommates at 435 East Thorton, testified that she was outside with her roommates and her neighbor when Defendant came up to them to ask for a quarter and told them that he was going to set his roommate on fire. They did not give him any money. Ms. Ware stated that he came back later and "he had a gas can and some dogs with him, and he said that he needed a last cigarette or a last beer before he went to jail because he was going to set his roommate on fire." She stated that when they saw the fire trucks and ambulances coming down the road, they finally took Defendant seriously and called the police.
 {¶ 10} Craig Khoenle, Ms. Peach's and Ms. Ware's neighbor, also testified as to the above events, adding that when he saw Defendant run down the street past Ms. Ware's and Ms. Peach's house, after the police and fire trucks had responded to the calls, Defendant told Mr. Khoenle that "[he] didn't do it."
 {¶ 11} Joseph Ledbetter was working at a Speedway gas station on the corner of Brown and Exchange streets on the night of September 10, 2003. He stated that Defendant came into the Speedway and purchased 27 cents worth of gas. He saw Defendant put the gas into a red plastic gas can. Defendant then left and walked away.
 {¶ 12} Brown testified that after he had gone to sleep in an upstairs bedroom in Defendant's house, Defendant returned home and entered the room in which Brown was sleeping. Defendant was holding a container of gasoline with a rag hanging out of the container and the rag was on fire. Brown sat up and asked Defendant what he was doing. Defendant then tossed the gasoline on Brown, setting him on fire. Defendant turned and ran down the stairs while Brown tried to pat out the fire. Brown started walking backwards and fell out of a window onto Defendant's porch roof. On the roof, Brown had started screaming for help, and a neighbor called 911.
 {¶ 13} Phyllis Gerhart, Defendant's neighbor, testified that she saw a fire coming from Defendant's house, called the fire department, and then went to the window to see what was going on. She heard a man screaming for help, saying that he was on fire. In the meantime, she testified that she saw Defendant walk out of his house with his dogs. He walked down the street about 15 steps and then turned back and yelled, "I'll kill you. I surely will kill you." Ms. Gerhart testified that while Brown was on the roof screaming, Defendant was trying to get his dogs out of the house. "[Defendant] knew [Brown] was up there. He didn't pay [any] attention to him whatsoever."
 {¶ 14} The fire department showed up and a fireman rescued Brown from the roof and took him to the hospital. Brown remained in the hospital for 33 days for treatment of his burns. As of the trial date, Brown had five skin graft surgeries, and was scheduled to have three more.
 {¶ 15} Todd Webb, a fire arson investigator for the Akron Fire Department, went to see Brown in the hospital a few hours after he had been admitted to question him about the incident. Mr. Webb wrote in his report that: "[v]ictim [states] suspect splashed liquid on him and then set him on fire. Victim states he was asleep at the time of incident and was awakened by suspect's actions."
 {¶ 16} Defendant ran to Jeff Markey's house around 4 a.m. on the 10th of September. Defendant knocked on the door until Mr. Markey woke up. Defendant told Mr. Markey: "I think I'm in real trouble, Jeff. I might have killed somebody." Defendant stated that he had gotten into a fight with Brown and he swung a gas can at Brown and hit him. Defendant stated that Brown had a cigarette in his mouth and that is how he caught on fire. Mr. Markey testified that he thought that Defendant was intoxicated.
 {¶ 17} In this case, the jury found that Defendant had purposely set fire to Brown by pouring gasoline on him. Defendant maintains that the jury's finding was based on incredible evidence. Defendant testified that when he returned to his house, he saw Brown sitting on the bed smoking crack cocaine. Defendant then told Brown to get out of his house. Defendant claims then that Brown came after him with a knife. Defendant stated that he was holding the container of gasoline in front of himself for protection. Some of the gasoline spilled out from the container, and then Brown lit his lighter to see what was going on. Both Defendant and Brown were set on fire.
 {¶ 18} Brown testified that he had not been smoking that night, and he had neither a knife nor a lighter with him that evening. Brown maintained he had been sleeping when Defendant had entered his room with a gas can and a burning rag. When he asked Defendant what was going on, Defendant threw the gasoline on him. Though Defendant's and Brown's version of the events leading up to Brown's body being burned differ, we do not find that Defendant's conviction was against the manifest weight of the evidence.
 {¶ 19} The jury in this case had the opportunity to view the witnesses' testimony and judge their credibility. In a jury trial, matters of credibility of witnesses are primarily for the trier of fact, therefore, we must give deference to the jurors' judgment. See State v.Lawrence (Dec. 1, 1999), 9th Dist. No. 98CA007118, at 13; State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. We will not overturn the verdict on a manifest weight challenge simply because the jury chose to believe the evidence offered by the prosecution. Statev. Merryman, 9th Dist. No. 02CA008109, 2003-Ohio-4528, at ¶ 28. See, also, State v. Warren (1995), 106 Ohio App.3d 753, 760. The evidence persuades us that the jury neither lost its way nor created a manifest miscarriage of justice in convicting defendant of attempted aggravated murder and aggravated arson. Accordingly, Defendant's assignment of error is overruled.
 {¶ 20} Defendant's assignment of error is overruled and the judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
Exceptions.
Whitmore, J., Batchelder, J., Concur.