DECISION AND JOURNAL ENTRY
{¶ 1} Defendant, Michael Bray, appeals from the judgment of the Lorain County Court of Common Pleas finding him guilty of assaulting a police officer and resisting arrest. We affirm.
 {¶ 2} On June 11, 2003, the Lorain County Grand Jury indicted Defendant on one count of assault on a peace officer, in violation of R.C. 2903.12(A), a fourth degree felony, one count of resisting arrest, in violation of R.C. 2921.33(A), a second degree misdemeanor, and one count of obstruction of official business, in violation of R.C. 2921.31(A), a second degree misdemeanor. A jury trial ensued. On September 17, 2004, the jury returned a verdict of guilty on all three charges, and Defendant was sentenced to eight months incarceration on count one. He was not sentenced on the other two counts.
 {¶ 3} Defendant appeals his conviction, asserting three assignments of error for our review. For ease of discussion, we will consider all three assignments of error together.
 ASSIGNMENT OF ERROR I
"[Defendant's] conviction for assault on a peace officer was against the manifest weight of the evidence."
 ASSIGNMENT OF ERROR II
"[Defendant's] conviction for resisting arrest was against the manifest weight of the evidence."
 ASSIGNMENT OF ERROR III
"The trial court erred by denying [Defendant's] motion for judgment of acquittal pursuant to [Crim.R. 29]."
 {¶ 4} In his three assignments of error, Defendant maintains that there was insufficient evidence to overcome his motion for acquittal, and that his conviction was against the manifest weight of the evidence. Specifically, Defendant claims that the evidence presented by the State was insufficient to prove beyond a reasonable doubt that Defendant assaulted a peace officer and resisted arrest. We find that Defendant's assertions lack merit.
 {¶ 5} Defendant's assignments of error as they pertain to his conviction for resisting arrest and obstruction of official business are moot, since he was not sentenced on either of the two misdemeanors. `"[A]n appeal is moot when no evidence is offered from which an inference can be drawn that the defendant will suffer some collateral disability or loss of civil rights from such judgment or conviction."' State v. Berndt
(1987), 29 Ohio St.3d 3, 4, quoting State v. Wilson (1975),41 Ohio St.2d 236, syllabus. Defendant has not shown any evidence that he will suffer some collateral disability or loss of civil rights as a result of his two misdemeanor convictions that carried no sentence. Thus, Defendant's assignments of error, as they pertain to his misdemeanors, are moot and will not be discussed. We will address Defendant's assignments of error as they relate to his felony conviction for assault on a peace officer.
 {¶ 6} Defendant argues that his conviction was against the manifest weight of the evidence, and that the conviction was based on insufficient evidence. Thus, he claims, his Crim.R. 29 motion should have been granted. Sufficiency and manifest weight of the evidence are legally distinct issues. State v. Manges, 9th Dist. No. 01CA007850, 2002-Ohio-3193, at ¶ 23, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 386. Sufficiency tests whether the prosecution has met its burden of production at trial, whereas a manifest weight challenge questions whether the prosecution has met its burden of persuasion. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3.
 {¶ 7} A claim of insufficient evidence invokes a due process concern and raises the question of whether the evidence is legally sufficient to support the jury verdict as a matter of law. Thompkins,78 Ohio St.3d at 386. In reviewing a challenge to the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact." State v. Clemons (1998), 82 Ohio St.3d 438,444, citing Jenks, 61 Ohio St.3d at 273.
 {¶ 8} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Gulley, supra, at 3, citing Thompkins, 78 Ohio St.3d at 390. (Cook, J., concurring). When a defendant maintains that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 9} This court may only invoke the power to reverse based on manifest weight in extraordinary circumstances where the evidence presented at trial weighs heavily in favor of a defendant. Id. Absent extreme circumstances, an appellate court will not second-guess determinations of weight and credibility. Sykes Constr. Co. v. Martell
(Jan. 8, 1992), 9th Dist. Nos. 15034 and 15038, at 6.
 {¶ 10} "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." (Emphasis omitted.) Statev. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4. Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. CuyahogaFalls v. Scupholm (Dec. 13, 2000), 9th Dist. Nos. 19734 and 19735, at 5, quoting Roberts at 4.
 {¶ 11} Defendant was convicted of assault on a peace officer in violation of R.C. 2903.13(A), a fourth degree felony. R.C. 2903.13(A) provides that: "[n]o person shall knowingly cause or attempt to cause physical harm to another[.]" R.C. 2903.12(C)(3) provides that "[i]f the victim of the offense is a peace officer * * * while in the performance of their official duties, assault is a felony of the fourth degree." We do not find that the jury acted against the manifest weight of the evidence in finding Defendant guilty of assault on a peace officer.
 {¶ 12} The events leading to Defendant's conviction occurred on the evening of May 3, 2003. Ms. Haag, a dispatcher for the Sheffield Lake Police Department, testified that on May 3, 2003, she received a 911 call from Defendant. Defendant called to report damage his property and to a vehicle in his driveway. He stated that the damage was done by his ex-girlfriend, Michelle Waldrop. While on the phone, Defendant called Ms. Haag a wench, and said that the police officers had better do their jobs and get there. Ms. Haag stated that "[h]e was very abusive * * * and agitated." Ms. Haag relayed the information, including her observation that Defendant was very angry, to Sergeant Keenan and Officer Zedella, who both responded to Defendant's call.
 {¶ 13} Sergeant Keenan testified that he and Officer Zedella arrived at Defendant's house in response to his 911 call at the same time (though in separate vehicles). According to Sergeant Keenan, as they were approaching Defendant's house, Defendant looked at Patrolman Zedella and said, "You; yeah, you, motherfucker." The officers continued to walk up to Defendant's house. When Zedella got about two to three feet away from the house, Defendant "looked at Patrolman Zedella and said, `We can settle this right now, motherfucker[.]" Keenan testified that at that point Defendant made a move out towards the door and "he started leaning out of the doorway, and he brought his right arm up in an apparent act to assault Patrolman Zedella." Zedella then grabbed Defendant and took him to the floor. The two officers tried to put handcuffs on Defendant, who was struggling with them and attempting to get off the ground. Keenan stated that it took several minutes to place Defendant under arrest because he kept screaming and yelling, and he was fighting and aggressively trying to pull away from them.
 {¶ 14} Officer Zedella also testified at Defendant's trial. He stated that Dispatcher Haag informed him that Defendant had called 911 to complain of some damage to property, that he was verbally abusive and quite mad. With that information, Zedella stated that he proceeded to Defendant's residence in a calm manner, ready to do his job.
 {¶ 15} According to Zedella's testimony, as the officers approached the house, Defendant appeared at his front door, opened the door and "pointed directly at [Zedella] and said, `You; you, you motherfucking punk.'" Zedella said that Defendant looked very angry. When Zedella got within about two feet of Defendant, Defendant looked at him and said "We can settle this right here, you motherfucker[.]" At that moment, Defendant's "right hand flew up towards [Zedella's] face." Zedella testified that "[Defendant] was trying to punch [him] in the face." He stated that Defendant "made an obvious and purposeful attempt to punch [him] in the face."
 {¶ 16} Zedella stated that when he saw Defendant try to punch him, he "moved away to avoid * * * that blow, and reached out and grabbed [Defendant]." The officers together struggled to arrest Defendant, who was yelling and thrashing about.
 {¶ 17} Defendant alleges that it was against the manifest weight of the evidence for the jury to have relied on the above testimony to find him guilty of assault on a peace officer. We disagree.
 {¶ 18} Defendant testified in his own behalf in his case. Defendant stated that on May 3, 2003, he called 911 to report the damage done to his property by his ex-girlfriend. The ex-girlfriend had left the scene by the time the officers had showed up. However, Defendant testified that as the officers arrived at his house and as they were walking up to his door, he saw his ex-girlfriend in the passenger seat of a black pickup truck stopped at a stop sign. He stated that he took a step, leaned forward, pointed, and stated to the officers: "There they are, right now. * * * Those are the girls that damaged the house." According to Defendant, at that point, he was grabbed by the arm and knocked to the ground. While the police proceeded to arrest him, Defendant was calling out to his neighbor, Jeffrey Long, who was in the house, saying, "Jeff, are you watching what's happening?" Mr. Long responded that he was watching. Defendant then was handcuffed, put in the police cruiser and taken to the police station.
 {¶ 19} Michelle Waldrop, Defendant's ex-girlfriend, testified that she had gone to Defendant's house on the night in question with a friend of hers, Sarah Hogston. She said that she noticed a female's car in Defendant's driveway and got upset. She entered Defendant's house without knocking and went to his bedroom door. She conceded that she had kicked a hole in Defendant's bedroom door, and then "smacked" him when he came out. Ms. Waldrop then testified that she went back to Ms. Hogston's car, a black pickup truck, and told Ms. Hogston to drive away because she thought that Defendant called the police on her and they might be on their way.
 {¶ 20} Ms. Waldrop stated that they stopped at a stop sign and watched Defendant with the police. She testified that as soon as Defendant saw them in the car stopped at the stop sign, he pointed over to her and her friend and told the officers "[t]here they are." According to Ms. Waldrop, as soon as Defendant pointed to them, "the officer grabbed him by his arm and his back, slung him to the ground[.]" At that point, Ms. Waldrop and Ms. Hogston left the scene.
 {¶ 21} Ms. Hogston testified she was with Ms. Waldrop on the night in question. Ms. Waldrop had gone into Defendant's house, and then came back out to the car and told Ms. Hogston that she had kicked a hole in Defendant's door and slapped him. Ms. Waldrop told Ms. Hogston to drive away because she feared that the police would be on their way.
 {¶ 22} As they were driving away, they stopped at a stop sign and saw Defendant with the police officers. While they were stopped, Ms. Hogston testified that she saw Defendant point to her and Ms. Waldrop. At that point, she testified that a police officer grabbed Defendant's arm and knocked him to the ground.
 {¶ 23} Finally, Jeffrey Long, Defendant's neighbor, who was in Defendant's house at the time of the event also stated that Defendant had been pointing to Ms. Hogston and Ms. Waldrop when the police grabbed his arm and slung him to the ground.
 {¶ 24} The State's witnesses' testimony conflict with the Defendant's witnesses' testimony as presented at Defendant's trial. While the two police officers maintain that Defendant attempted to assault Officer Zedella, Defendant, his neighbor, his ex-girlfriend and her friend all testified that Defendant was trying to point to Ms. Waldrop in Ms. Hogston's black pickup truck. Evidence was introduced at trial in support of both the State's position that Defendant assaulted a peace officer and Defendant's position that he was merely trying to point to Ms. Waldrop to show the police that she was the person who had damaged his property.
 {¶ 25} In this case, the jury found that Defendant had attempted to assault a peace officer. The jury had the opportunity to view the witnesses' testimony and judge their credibility. In a jury trial, matters of credibility of witnesses are primarily for the trier of fact, therefore, we must give deference to the jurors' judgment. See State v.Lawrence (Dec. 1, 1999), 9th Dist. No. 98CA007118, at 13; State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 26} We will not overturn the verdict on a manifest weight challenge simply because the jury chose to believe the evidence offered by the prosecution. State v. Merryman, 9th Dist. No. 02CA008109, 2003-Ohio-4528, at ¶ 28. See, also, State v. Warren (1995), 106 Ohio App.3d 753, 760. This Court will not substitute its judgment for that of the jury who was in a better position to evaluate the credibility of the witnesses. Statev. Green (1996), 117 Ohio App.3d 644, 650, citing State v. Waddy
(1992), 63 Ohio St.3d 424,430. The evidence persuades us that the jury neither lost its way nor created a manifest miscarriage of justice in convicting Defendant of assault on a peace officer.
 {¶ 27} Having found above that the Defendant's conviction was not against the manifest weight of the evidence, any issues concerning sufficiency of the evidence must be similarly disposed of. See Roberts,
supra, at 8. Thus, we find that the trial court did not err in denying Defendant's Crim.R. 29 motion for acquittal. Accordingly, Defendant's three assignments of error are overruled.
 {¶ 28} Defendant's assignments of error are overruled and the judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Batchelder, J., Moore, J., Concur.