[Cite as *State v. Slater*, 2016-Ohio-7766.]

STATE OF OHIO      )             IN THE COURT OF APPEALS
                        )ss:        NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

STATE OF OHIO                     C.A. No.     28049

      Appellee

      v.                           APPEAL FROM JUDGMENT
                                 ENTERED IN THE
DWIGHT E. SLATER, JR.       COURT OF COMMON PLEAS
                                 COUNTY OF SUMMIT, OHIO
      Appellant             CASE No.    CR 2015 02 0541

DECISION AND JOURNAL ENTRY

Dated: November 16, 2016

WHITMORE, Judge.

{¶1} Appellant, Dwight E. Slater, Jr., appeals from the November 25, 2015 judgment of the Summit County Court of Common Pleas. This Court affirms.

I

{¶2} In the early morning hours of February 19, 2015, S.K. called 911 to report a domestic dispute between herself and her live-in boyfriend, Mr. Slater. Upon investigation into S.K.'s allegations, Akron police officers arrested Mr. Slater and a temporary protection order was issued in favor of S.K.

{¶3} Mr. Slater was indicted on (1) one count of domestic violence, in violation of R.C. 2919.25(A), a felony of the fourth degree, and (2) one count of domestic violence, in violation of R.C. 2919.25(C), a misdemeanor of the second degree. The indictment was later supplemented to include a third count for violating a protection order, in violation of R.C. 2919.27, a misdemeanor of the first degree.

{¶4} Mr. Slater waived his right to a jury trial and a bench trial ensued. Officer Matthew Scherick, Officer Robert Miller, Officer Jacob Fangmann, and S.K. testified on behalf of the State. Mr. Slater testified on his own behalf.

{¶5} At the conclusion of trial, the court found Mr. Slater guilty of domestic violence, in violation of R.C. 2919.25(A), a felony of the fourth degree. Further, the court acquitted Mr. Slater of both misdemeanors: (1) domestic violence (R.C. 2919.25(C) and (2) violating a protection order (R.C. 2919.27). The court sentenced Mr. Slater to two years community control, which included, inter alia, a no contact provision as to S.K. and that Mr. Slater attend a 26-week batterer's intervention program through Summit Psychological Associates.

{¶6} Mr. Slater now appeals, raising two assignments of error.

II

Assignment of Error Number One

MR. SLATER WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED UNDER THE SIXTH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE 1, SECTION 1, 10 & 16 OF THE OHIO CONSTITUTION.

{¶7} In his first assignment of error, Mr. Slater argues ineffective assistance of counsel because trial counsel put forth "minimal effort" in defending him. Specifically, Mr. Slater argues that trial counsel (1) failed to object to hearsay; (2) failed to call Dennis Williams-Luster, an alleged eyewitness, to testify on his behalf; and (3) only made his Crim.R. 29 motion for "the sake of the record."

{¶8} In response, the State argues that Mr. Slater failed to delineate which statements on pages 16-17, 21, 50-52 of the transcript he believes to be hearsay. Further, the State argues that, due to the "overwhelming" evidence of Mr. Slater's guilt, the trial court properly denied the Crim.R. 29 motion, whether trial counsel made a strenuous argument or just made an argument

to preserve the record. Hence, the State argues that Mr. Slater suffered no prejudice because the outcome of the court's ruling would have been the same either way.

{¶9} To prevail on a claim of ineffective assistance of counsel, Mr. Slater must establish (1) that his counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that but for his counsel's deficient performance the result of the trial would have been different. *Strickland v. Washington,* 466 U.S. 668, 687, 694 (1984). A deficient performance is one that falls below an objective standard of reasonable representation. *State v. Bradley,* 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. This Court, however, "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689, quoting *Michel v. Louisiana,* 350 U.S. 91, 101 (1955). In addition, to establish prejudice, Mr. Slater must show that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *Strickland* at 694.

{¶10} First, as to the alleged hearsay statements, Mr. Slater has not indicated which statements he believes trial counsel should have objected to during the direct examinations of Officers Scherick and Fangmann[1]. As such, this Court will not make an argument on his behalf. *See* App.R. 16(A)(7); *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998) ("If an argument exists that can support this assignment of error, it is not this [C]ourt's duty to root it out.").

---

[1] We note that Officer Fangmann only testified as to the allegations regarding a violation of the temporary protection order. Mr. Slater was acquitted of this charge. Thus, no prejudice occurred.

{¶11} Second, as to trial counsel's decision not to have Mr. Williams-Luster testify, trial counsel explained his strategy as follows:

> [n]ow, although * * * Mr. Williams-Luster is present today, I do not anticipate calling him to testify. The reason being, while he was in the house during all of this, he has no direct observation of an alleged event. So it is testifying in the negative. Frankly, I think Mr. Slater is able to very clearly describe what happened that evening.

"[T]here are numerous avenues in which counsel can provide effective assistance of counsel in any given case, and debatable trial strategies do not constitute ineffective assistance of counsel." *State v. Maldonado*, 9th Dist. Lorain No. 01CA007924, 2002-Ohio-2205, ¶ 7. Accordingly, "'[d]ecisions regarding the calling of witnesses are within the purview of defense counsel's trial tactics [ ]' and absent a showing of prejudice, the failure to call witnesses will not be deemed erroneous." (Alterations sic.) *Id.*, quoting *State v. Coulter*, 75 Ohio App.3d 219, 230 (12th Dist.1992). Here, the trial court heard Officer Scherick's testimony that Mr. Williams-Luster was present in the kitchen during this incident and that when asked "if he saw anything or heard anybody fighting," he said, "I didn't see nothing." Further, Mr. Slater has not pointed to anything in the record that establishes a reasonable probability that, but for trial counsel's decision not to call Mr. Williams-Luster as a witness, the result of the trial would have been different.

{¶12} Third, as to the strength of trial counsel's Crim.R. 29 motion, the trial court heard testimony from two Akron police officers that: (1) S.K. and Mr. Slater lived together and have two children in common; (2) on the night of the incident, S.K's clothes were torn, she was crying, she was wearing one shoe, and she had a bloody lip; and (3) S.K. stated that Mr. Slater attacked her. Further, S.K. testified that Mr. Slater "[h]it [her] in [the] face." In spite of this evidence, trial counsel still moved for an acquittal after the State rested and again at the end of

trial. When reviewing a conviction for sufficiency, evidence must be viewed in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The pertinent question is whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* In viewing the above evidence in a light most favorable to the State, Mr. Slater's Crim.R. 29 motion, no matter how persuasive, clearly would have been denied. Thus, because a rational trier of fact could have found the essential elements of domestic violence, pursuant to R.C. 2919.25(A),[2] proven beyond a reasonable doubt, Mr. Slater cannot demonstrate prejudice.

{¶13} Mr. Slater's first assignment of error is overruled.

### Assignment of Error Number Two

MR. SLATER'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE [] IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION.

{¶14} In his second assignment of error, Mr. Slater argues that his conviction for domestic violence, in violation of R.C. 2919.25(A), is against the manifest weight of the evidence. Specifically, Mr. Slater argues that this matter is a classic "he said-she said" dispute, and S.K. changed her testimony at trial as to what happened on February 19, 2015, and she "has a propensity for staging incidents for the purpose of calling 911."

{¶15} In response, the State argues that the trial court did not err in "finding the * * * officers and the victim to be more credible than the self-serving testimony of [Mr. Slater]." We agree.

---

[2] R.C. 2919.25(A) states that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member."

{¶16} In determining whether a conviction is against the manifest weight of the evidence an appellate court:

> must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶17} A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than it supports the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. *Id.* at 388, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court must make every reasonable presumption in favor of the judgment and findings of fact of the trial court. *Karches v. Cincinnati*, 38 Ohio St.3d 12, 19 (1988). Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983); *see also Otten* at 340.

{¶18} "Credibility determinations are primarily within the province of the trier of fact[,]" who is "'free to believe all, part, or none of the testimony of each witness.'" *State v. Just,* 9th Dist. Wayne No. 12CA0002, 2012-Ohio-4094, ¶ 42, citing *State v. Violett,* 9th Dist. Medina No. 11CA0106-M, 2012-Ohio-2685, ¶ 11; *State v. Cross,* 9th Dist. Summit No. 25487, 2011-Ohio-3250, ¶ 35, quoting *Prince v. Jordan,* 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35.

{¶19} In the present matter, after hearing testimony from several witnesses, including Mr. Slater, and reviewing the evidence submitted at trial, the court found Mr. Slater guilty of

domestic violence, in violation of R.C. 2919.25(A), and acquitted him of all other charges. R.C. 2919.25(A) states that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member."

{¶20} Officer Scherick testified that he was one of the officers that responded to S.K's 911 call regarding a "domestic fight." Upon arriving at the parties' address, Officer Scherick observed S.K. coming out of an apartment complex across the street, and he described her appearance and demeanor as follows:

> * * *
> [a] female came to the doorway, very upset, crying. She looked shaken up. Her hair was disheveled. Her clothes were torn.
> * * *
> I believe she had on just like a small black shirt and a pair of * * * leggings* * *. And she only had one shoe on, which was very odd, because that night it was very cold, extremely cold. * * * She wasn't prepared for the weather. I mean, it was freezing out, and she came to the doorway in this condition.
> * * *
> And I'm struck by her appearance and how she is not prepared to be standing outside, and the first thing I thought to do is get her in our car, because it's a lot warmer in our car than standing on the street or the sidewalk in the cold. I look at her further. She has red marks on her face and a little bit of blood on her mouth.
> * * *
> She kept her hand close to her chest because her bra was exposed. * * * She was very upset. I could tell she was crying.
> * * *

Further, Officer Scherick testified that S.K. told him that: (1) she lived with Mr. Slater; (2) they had children together; (3) they argued over Mr. Slater's cousin visiting and a cell phone; and (4) "[Mr. Slater] hit [her]. [Mr. Slater] attacked [her]."

{¶21} Officer Miller testified that when he and Officer Scherick first arrived at the parties' home, he observed S.K. "run out of a house across the street" looking "upset like she had been crying," and wearing "disordered" clothing and only one shoe. Officer Miller also observed that S.K. had "a spot of blood on her mouth." Further, Officer Miller stated that Mr.

Slater admitted to arguing with S.K., but also stated that he "wasn't even sure what they argued about." Officer Miller indicated that he did not observe any injuries to Mr. Slater's person.

{¶22} S.K. testified that she was in a relationship with Mr. Slater for ten years and they had two children together. Further, she was helping to raise Mr. Slater's son from a prior relationship. At the time of the incident, she lived with Mr. Slater and their children at Moore Street in Akron, Ohio. On the date in question, S.K. testified that she and Mr. Slater were arguing over whether or not she would go upstairs to bed, and the argument turned physical. S.K. further testified that Mr. Slater threatened "he was going to drive [S.K.] outside," and then he "[h]it [her] in [the] face." S.K. went to a neighbor's house and called the police.

{¶23} Mr. Slater testified that he typically works from 5:30 p.m. in the evening to 1:30 a.m. in the morning, Sunday through Thursday. On the date in question, Mr. Slater picked up his cousin, Mr. Williams-Luster, after work, went through a drive-through to buy beer, and came home to find S.K. awake and cleaning the kitchen. Mr. Slater testified that he and S.K. had been having some disagreements, so he was hesitant about Mr. Williams-Luster coming over to the house that evening. However, Mr. Slater invited his cousin inside, approached S.K. in the kitchen, and asked her the location of the remote control for the television in order to adjust the volume. According to Mr. Slater, this question spurred an argument because S.K. claimed that she did not have the remote control or her cell phone with the remote control app on it. Mr. Slater continued questioning her about the whereabouts of her cell phone. In response, S.K. left the house. Mr. Slater further testified that he did not raise his voice or touch S.K. during the argument, and, when she left the house, there were no marks on her face.

{¶24} As stated above, the trier of fact is free to believe all, some, or none of a witness' testimony. *See Just,* 2012-Ohio-4094, at ¶ 42. "Similarly, when conflicting evidence is

presented at trial, a conviction is not against the manifest weight of the evidence simply because the [trier of fact] believed the [police officers' and S.K.'s] testimony over the testimony of [Mr. Slater], as in the instant case." *See State v. Yarbour*, 9th Dist. Medina No. 04CA0008-M, 2004-Ohio-5444, ¶ 22, citing *State v. Warren*, 106 Ohio App.3d 753, 760 (1st Dist.1995). Further, having reviewed the record, we cannot conclude that the court clearly lost its way by doing so. *See Otten,* 33 Ohio App.3d at 340.

{¶25} Mr. Slater's second assignment of error is overruled.

III

{¶26} Mr. Slater's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
BETH WHITMORE
FOR THE COURT

MOORE, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

DAVID G. LOMBARDI, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.