[Cite as *State v. Lopane*, 2019-Ohio-4660.]

STATE OF OHIO        )                       IN THE COURT OF APPEALS
                            )ss:               NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

STATE OF OHIO

    Appellee

    v.

MATTHEW JAMES LOPANE

    Appellant

C.A. Nos.     29245
                      29246

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.   CR-2017-04-1451
                CR-2018-05-1557

DECISION AND JOURNAL ENTRY

Dated: November 13, 2019

---

CARR, Judge.

**{¶1}** Defendant-Appellant Matthew Lopane appeals the judgment of the Summit County Court of Common Pleas. This Court affirms, but remands the matter for an issuance of a nunc pro tunc entry in case CR-2018-05-1557 (appeal no. 29246).

I.

**{¶2}** In May 2017, in case CR-2017-04-1451 (appeal no. 29245), an indictment was filed charging Lopane with one count of having weapons while under disability and one count of aggravated menacing. Those charges related to an incident which occurred outside Lopane's home on April 23, 2017. The matter proceeded to a bench trial. The trial court granted Lopane's Crim.R. 29 motion as to the charge of aggravated menacing but found him guilty of having weapons while under disability. Lopane was sentenced to three years in prison.

{¶3} In May 2018, in case CR-2018-05-1557 (appeal no. 29246) an indictment was filed charging Lopane with two counts of aggravated robbery, two counts of felonious assault, one count of having weapons while under disability, one count of theft of drugs, one count of petty theft, two counts of aggravated trafficking in drugs, and two counts of aggravated possession of drugs. A firearm specification and a repeat violent offender specification accompanied each of the first four charges. At a change of plea hearing, the State moved to amend count three of the indictment to aggravated assault and dismiss the accompanying specifications and to amend count nine to attempted aggravated trafficking in drugs. Lopane pleaded guilty to those two counts and it is clear from the transcript that the trial court dismissed the remaining charges and specifications. Based upon a joint sentencing recommendation, the trial court sentenced Lopane to an aggregate term of 18 months in prison.

{¶4} Lopane timely appealed both judgment entries, and the appeals were subsequently consolidated. While Lopane's appellate brief only challenges his conviction in case CR-2017-04-1451 (appeal no. 29245), we briefly address case CR-2018-05-1557 (appeal no. 29246), as the judgment entry from that case contains several clerical errors. The transcript is clear that the trial court dismissed all charges and specifications aside from the amended charge of aggravated assault and attempted aggravated drug trafficking, to which Lopane pleaded guilty. However, the judgment entry does not reflect the dismissal of all of the specifications, including the repeat violent offender specification for count three. *See State v. Smead*, 9th Dist. Summit No. 24903, 2010-Ohio-4462, ¶ 10; *see also State v. McClanahan*, 9th Dist. Summit No. 25284, 2010-Ohio-5825, ¶ 7. Thus, this Court will remand appeal no. 29246 so that the trial court can issue a nunc pro tunc entry to correct the typographical errors.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FOUND MR. LOPANE GUILTY BECAUSE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT SUCH FINDINGS.

## ASSIGNMENT OF ERROR II

MR. LOPANE'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶5} Lopane argues in his assignments of error that his conviction for having weapons while under disability is based upon insufficient evidence and is against the manifest weight of the evidence. Specifically, Lopane disputes that the evidence supports that he "knowingly acquired, had, carried, or used any firearm."

## Sufficiency of the Evidence

{¶6} When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

{¶7} Lopane was found guilty of violating R.C. 2923.13(A)(2). That section provides that, "[u]nless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person is

under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence." R.C. 2923.13(A)(2).

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B).

{¶8} Lopane does not dispute that he had a disability; instead, he asserts that the evidence does not support that he acquired, had, carried, or used the firearm at issue.

{¶9} On April 23, 2017, S.M. received a frantic phone call from her teenaged son. He asked S.M. to come help him and his two friends because someone was shooting at them. S.M. testified she drove to a house on Manchester Road, which was approximately a mile or so from her home, and confronted Lopane, who was just outside his house. Initially, Lopane denied shooting at the juveniles and indicated that they were trying to break into his car. Lopane then acknowledged shooting the gun to frighten the juveniles, but shortly thereafter asserted it was his wife's gun and that she did it. S.M. also testified that Lopane and his wife were arguing because Lopane took his wife's gun and fired it. During the argument, Lopane's wife stated that it was her gun.

{¶10} S.M. also called 911. Officers Brittany French and Jason Horak with the Akron Police Department responded to the call. Officer French interviewed S.M. S.M. told Officer French that her son had come home and told her that he and his friends were playing around and a man shot at them and then they all ran home. Two of the teenagers returned to the scene and

were interviewed there. The third teenager was too scared, but after Officer French called the third juvenile, she too returned to the scene. S.M.'s son told Officer French that he and his friends were playing hide and seek and a man came out, chased them, and shot towards them.

{¶11} Officer French also spoke with Lopane's wife, who initially denied there was a gun. However, Officer French also spoke to neighbors, who confirmed hearing a gunshot. Based upon what the neighbors told Officer French, she asked Lopane's wife for permission to search the house, which Lopane's wife agreed to. When Officer French asked where the guns were, Lopane's wife directed Officer French where to search. Two guns were recovered, a .25 caliber and a .22 caliber handgun.

{¶12} Officer French then returned to the patrol car where her partner, Officer Horak, was interviewing Lopane. Officer French asked Lopane which gun he used and Lopane replied that he used the black .22. Through the investigation, Officer French learned that the shot was a warning shot which was fired into the ground and it was not fired near the juveniles, who were near the sidewalk.

{¶13} Officer Horak spoke with Lopane. Lopane initially told Officer Horak that he saw the group of juveniles and thought that they were trying to break into his car. Thus, Lopane came out and scared off the juveniles. Lopane commented that break-ins had been happening a lot in the area and he was upset about it; Officer Horak confirmed that was true. However, Lopane indicated that he did not have a gun and did not use one that day. As the police continued investigating, it became clearer to Officer Horak that Lopane had had a gun and had fired it. Officer Horak again asked Lopane about it and, at that point, Lopane admitted that he came outside with the gun to scare the juveniles off and fired a shot.

{¶14} A call between Lopane and his wife while Lopane was in jail was also admitted into evidence. In the call, Lopane expressed his belief that he could not be charged with having weapons while under disability because the guns were his wife's. Nonetheless, Lopane acknowledged that he went and took his wife's gun and fired it into the ground. He stated that he had the gun for only seconds.

{¶15} Lopane's wife testified for the defense. Lopane's wife averred that, prior to April 23, 2017, there had been numerous break-ins to cars and houses in her area. She admitted that she purchased both of the guns recovered from her house. On April 23, 2017, Lopane's wife testified that Lopane was outside working on her son's four-wheeler and he came in to eat. When they went back outside, they saw the teenagers and Lopane's wife observed one of the girls trying to get into the car. According to Lopane's wife, the girl started cussing at them and the juveniles ran down the street. Lopane's wife fired the .22 into the yard "as a warning" because she was upset. She maintained that she did not do it to hurt anyone and the juveniles were not close by. Lopane's wife asserted that she did not tell the police that she fired the shot because she was "the breadwinner" for the family and she did not want to get in trouble so Lopane decided to "take the charge." Lopane's wife alleged that Lopane's comments on the jailhouse call were to protect her.

{¶16} We can only conclude that, when viewed in a light most favorable to the prosecution, sufficient evidence was presented whereby a trier of fact could conclude beyond a reasonable doubt that on April 23, 2017, Lopane knowingly acquired, had, carried, or used a firearm. *See* R.C. 2923.13(A)(2). On that day, Lopane admitted to police that he fired the black .22 caliber handgun. Irrespective of whether the gun was his or his wife's, there was evidence that Lopane used the firearm. Lopane argues that, because none of the juveniles who witnessed

the shooting testified and no forensic testing was done, he could not be found guilty of having weapons while under disability. However, Lopane himself admitted to police that he fired the gun and that evidence was before the trier of fact.

{¶17} Given Lopane's argument on appeal, we cannot say that Lopane has demonstrated that his conviction for having weapons while under disability is based upon insufficient evidence.

{¶18} Lopane's first assignment of error is overruled.

### Manifest Weight of the Evidence

{¶19} Lopane also argues that his conviction for having weapons while under disability is against the manifest weight of the evidence.

{¶20} In reviewing whether a conviction is against the weight of the evidence,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340.

{¶21} Essentially, Lopane appears to argue that, because his wife testified that the guns were hers and that she was the one who fired the gun at issue, his conviction is against the weight of the evidence. Here, undoubtedly, the trier of fact was presented with conflicting evidence.

There was evidence presented that Lopane fired the gun and there was also testimony from Lopane's wife that she was the one who fired the gun. While Lopane argues that he was protecting his wife by admitting to shooting the gun, the trier of fact could have instead believed that it was Lopane's wife who was attempting to protect Lopane by asserting at trial that she fired the gun. Lopane admitted to firing the weapon not only to police, but also to his wife during the jailhouse call. During that call, Lopane's wife did not dispute Lopane's statements. "In sifting through conflicting evidence presented at trial, the trier of fact is free to believe or disbelieve any, or all, of the testimony from each witness." *State v. Jimenez*, 9th Dist. Medina No. 18CA0017-M, 2019-Ohio-1693, ¶ 25. Moreover, "[t]his Court has repeatedly held that the trier of fact is in the best position to determine the credibility of witnesses and evaluate their testimony accordingly." *State v. McQuistan*, 9th Dist. Medina No. 17CA0007-M, 2018-Ohio-539, ¶ 40, quoting *State v. Johnson*, 9th Dist. Summit No. 25161, 2011-Ohio-3296, ¶ 15. We cannot say that the trier of fact was unreasonable in resolving credibility issues or conflicts in the evidence. After conducting an independent review of the record, we cannot say that Lopane has demonstrated that the trier of fact lost its way in finding him guilty.

{¶22} Lopane's second assignment of error is overruled.

### III.

{¶23} Lopane's assignments of error are overruled. The judgments of the trial court are affirmed; however, appeal no. 29246 is remanded for the issuance of a nunc pro tunc entry as outlined above.

Judgment affirmed,
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

<br>

DONNA J. CARR
FOR THE COURT

TEODOSIO, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

NEIL P. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO GUEST, Assistant Prosecuting Attorney, for Appellee.