**[Cite as *State v. Parsons*, 2019-Ohio-5021.]**

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No. 18CA011328 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT |
| | ENTERED IN THE |
| ANTHONY PARSONS | COURT OF COMMON PLEAS |
| | COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. 17CR097137 |

## DECISION AND JOURNAL ENTRY

Dated: December 9, 2019

CALLAHAN, Judge.

{¶1} Appellant, Anthony Parsons, appeals his conviction for aggravated burglary. This Court affirms.

I.

{¶2} On the morning of September 20, 2017, D.H. noticed that a man he did not know walked past the window of his apartment several times. The man's behavior aroused D.H.'s suspicion, and he retrieved a knife from his bedroom in order to protect himself. Shortly thereafter, someone knocked on his apartment door. D.H. looked through the peephole and decided not to open the door because he did not recognize the man on the other side. After a second knock, D.H. looked through the peephole and recognized a man whom he had seen in the area. Although D.H. did not know the second man, he opened the apartment door with the chain in place.

{¶3} An unseen man forced the door open, breaking the chain, and three men entered D.H.'s apartment demanding money owed to a third party. D.H. told the intruders that he was not the person they were looking for and after approximately fifteen minutes, the intruders left. A neighbor called the police after the incident, and they identified Mr. Parsons as one of the intruders. He was charged with aggravated burglary in violation of R.C. 2911.11(A)(1) and robbery in violation of R.C. 2911.02(A)(2). Both charges were accompanied by repeat violent offender specifications. A jury found Mr. Parsons guilty of aggravated burglary, but not guilty of robbery, and the trial court found that he was a repeat violent offender. The trial court sentenced Mr. Parsons to a nine-year prison term, and Mr. Parsons filed this appeal.

II.

**ASSIGNMENT OF ERROR NO. 1**

THE ADMISSION OF HEARSAY EVIDENCE WAS A CONSTITUTIONAL
ERROR WARRANTING REVERSAL [AND] REMAND.

{¶4} In his first assignment of error, Mr. Parsons argues that the trial court erred by permitting a police officer to testify regarding out-of-court statements offered for their truth rather than to explain the course of the investigation. He also appears to argue that, as a consequence, this testimony violated his rights under the Confrontation Clause. This Court disagrees.

{¶5} Hearsay, as defined by Evid.R. 801(C), is an out-of-court statement offered to prove the truth of the matter asserted. Hearsay is generally inadmissible. Evid.R. 802. When a law enforcement officer testifies about a declarant's out-of-court statements in order to explain the progress of an investigation, the statements are not offered for the truth of the matter asserted and, therefore, are not hearsay. *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 186, citing *State v. Thomas*, 61 Ohio St.2d 223, 232 (1980). *See also State v. Ricks*, 136 Ohio St.3d

356, 2013-Ohio-3712, ¶ 23. "[I]n order for testimony offered to explain police conduct to be admissible as nonhearsay, the conduct to be explained should be relevant, equivocal, and contemporaneous with the statements; the probative value of statements must not be substantially outweighed by the danger of unfair prejudice; and the statements cannot connect the accused with the crime charged." *Ricks* at ¶ 27. The Sixth Amendment to the United States Constitution guarantees an accused the right to confront witnesses against him. *Crawford v. Washington*, 541 U.S. 36, 54 (2004). As a general rule, the Confrontation Clause is implicated by the admission of out-of-court statements that are testimonial in nature when the declarant does not testify in the proceeding. *See Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 309–310 (2009). When no such statements are admitted, the Confrontation Clause is not implicated. *See McKelton* at ¶ 186, citing *Crawford* at 59 .

{¶6}    Mr. Parsons directs this Court's attention to three exchanges in support of his allegation that the trial court permitted a police officer to convey hearsay testimony. The first relates to E.N., an individual who was also alleged to have been involved in the incident, and the full exchange between the State and the witness provides context for our discussion:

> Q:    Okay. Did you have the opportunity to interview anyone else while you were still in the square?
>
> A:    I spoke with * * * [N.W.] and [O.S.].
>
> Q:    And based upon your investigation, what did you do next? Based upon what you learned, without saying what was reported to you, what did you do?
>
> A:    [N.W.] was taken into custody. And [O.S.] was taken into custody. And [E.N.] was also taken into custody.
>
> * * *
>
> Q:    Okay. [E.N.] is a new name that we haven't already heard. Can you explain who that individual is[?]

A:     He was the one that, through the course of my investigation - - I believe it may have been his idea to facilitate this essential home invasion in the first place. Apparently, José - - or whoever José is - - owed his mom 5- to $800 or something along those lines, which may have been what got the ball rolling that led to why we're all here today.

Q:     And why is that important to you, to know that information?

[DEFENSE COUNSEL]:     Objection.

THE COURT: Overruled.

A:     It's important to know that based off the elements of burglary or robbery with the - -

[DEFENSE COUNSEL]:     Objection.

A:     - - purpose to commit- -

THE COURT: Overruled.

[DEFENSE COUNSEL]:     Legal conclusion, Your Honor.

THE COURT: Overruled.

A:     Purpose to commit a theft offense.  That's why it's important.

Q:     So you were able to learn their intent of breaking into [D.H.'s] door?

A:     Yes.

Although Mr. Parsons objected to a portion of this testimony on the basis that it called for a legal conclusion from the witness, he did not object to any of it on hearsay grounds.  *See* Evid.R. 103(A)(1) (requiring "a timely objection * * * stating the specific ground of objection, if the specific ground was not apparent from the context" in order to preserve error predicated on a ruling admitting evidence).  Consequently, he has forfeited all but plain error in connection with this exchange.  This exchange, however, does not contain any out-of-court statements made by a third party, whether offered for the truth of the matter asserted or not.  As such, neither Evid.R. 802 nor the Confrontation Clause is implicated by this exchange.  Because "error * * * [is] the

starting point for a plain-error inquiry[,]" Mr. Parsons' argument with respect to this exchange is not well-taken. *See State v. Hill*, 92 Ohio St.3d 191, 200 (2001); Crim.R. 52(B).

{¶7} The second exchange to which Mr. Parsons directs this Court's attention relates to the identification of the fourth man who was ultimately implicated in the incident. Again, the context is instructive:

> Q: And was [D.H.] able to identify the three individuals that broke into his home [from the lineups]?
>
> A: Yes, he was.
>
> Q: Did you interview anyone else, then, at the Elyria Police Department?
>
> A: Yeah. So goes to happen that [T.T.] ended up coming to the police department during that time because he, quote, "Wanted to clear his name." And, obviously, since [D.H.] was there, [D.H.] said, "Hey, that's the other guy sitting out in the lobby of the police department."
>
> [DEFENSE COUNSEL]: Objection as to what he said, Your Honor.
>
> THE COURT: Overruled.

D.H.'s statement was not offered for the truth of the matter asserted—an identification of T.T. as one of the perpetrators—but to explain how the officer came to interview another individual in connection with the incident shortly after D.H. identified him. This statement did not connect Mr. Parsons with the crime, and the risk of unfair prejudice to Mr. Parsons was low relative to the probative value of the answer. This statement, therefore, was properly admitted for the nonhearsay purpose of explaining the progress of the police investigation. *See Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, at ¶ 23.

{¶8} The final statement to which Mr. Parsons directs this Court's attention follows the last exchange between the State and the witness:

> A: Yeah. So goes to happen that [T.T.] ended up coming to the police department during that time because he, quote, "Wanted to clear his name." And,

obviously, since [D.H.] was there, [D.H.] said, "Hey, that's the other guy sitting out in the lobby of the police department."

[DEFENSE COUNSEL]:     Objection as to what he said, Your Honor.

THE COURT: Overruled.

Q:     You can continue.

A:     So, at that time, [T.T.] had ended up leaving.   And then he ended up coming back a short while later.  And then I got to speak with [T.T.], and he was extremely cooperative and fair and gave a great account of the whole ordeal.  And it, basically, matched [D.H.]'s story pretty much to a T with, maybe, a nuance here or there.  But it was a pretty consistent statement.

Q:     Anything further that you did at the police department after speaking with [T.T.]?

A:     Nothing that's a glaring detail to me right now.

As with the first statement that Mr. Parsons identified, he did not object to this exchange at trial and has forfeited all but plain error on appeal.   Nonetheless, this exchange also does not contain any out-of-court statements made by a third party, whether offered for the truth of the matter asserted or not.  As such, neither Evid.R. 802 nor the Confrontation Clause is implicated by this exchange.   Because "error * * * [is] the starting point for a plain-error inquiry[,]" Mr. Parsons' argument with respect to this exchange is not well-taken.  *See Hill*, 92 Ohio St.3d at 200; Crim.R. 52(B).

{¶9}     The trial court did not abuse its discretion by admitting the testimony at issue in Mr. Parsons' first assignment of error, and it is overruled.

### ASSIGNMENT OF ERROR NO. 2

PARSON[S'] CONVICTION FOR AGGRAVATED BURGLARY IS SUPPORTED BY INSUFFICIENT EVIDENCE.

{¶10} Mr. Parsons' second assignment of error argues that his conviction is supported by insufficient evidence.  This Court disagrees.

{¶11} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009–Ohio–6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J., concurring). For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id*.

{¶12} Mr. Parsons was convicted of aggravated burglary in violation of R.C. 2911.11(A)(1), which provides:

> No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if * * * [t]he offender inflicts, or attempts or threatens to inflict physical harm on another[.]

"Physical harm" to a person is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). Mr. Parsons has not argued that the evidence at trial was insufficient to establish that he trespassed in an occupied structure when D.H. was present with the purpose to commit a criminal offense. Instead, he has argued that the evidence was insufficient to demonstrate that he inflicted, or attempted or threatened to inflict, physical harm on D.H.

{¶13} Complicity is established when a person acts with the level of culpability required for an offense in soliciting or procuring another to commit the offense, aiding or abetting in the

commission of the offense, conspiring to commit the offense, or causing an innocent or irresponsible individual to commit the offense. R.C. 2923.03(A). A conviction based on complicity by aiding and abetting under R.C. 2923.03(A)(2) must be based on evidence showing "that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus. This intent may be inferred from the surrounding circumstances. *Id.* "When an individual acts to aid or abet a principal in the commission of an offense, the individual and principal are equally guilty and the individual is prosecuted and punished as if he were a principal offender." *State v. Shabazz*, 146 Ohio St.3d 404, 2016-Ohio-1055, ¶ 21, citing R.C. 2923.03(F).

{¶14} D.H. testified that although he did not open the door when the first individual, whom he identified as Mr. Parsons, knocked, he did do so when he recognized a second individual as N.W. D.H. also explained that he opened the door with the chain lock secured so that the door was open for a span of approximately three inches. Through that narrow opening, D.H. could see one person, but was not aware that two other individuals were out of his line of sight. According to D.H.'s testimony, he had a brief conversation with N.W. through the opening: D.H. testified that N.W. asked if he was "José," and he denied that he was. D.H. recalled that "right when [he] said that" T.T. reached past N.W.'s head and "hit the door open, bust the door open[.]" D.H. recalled that he had to back away from the door to avoid its impact because "[t]he door was gonna hit [him]." After T.T. forced the door open, requiring D.H. to move away from the entrance, he entered the apartment with N.W. and Mr. Parsons.

{¶15} D.H.'s testimony indicated that he stood close enough to the narrow opening between the door and the doorjamb to see and converse with N.W., who was standing at the

door. He also testified that when T.T. forced the door open, he reached around at the level of N.W.'s head, that the force of the impact damaged the door, and that his proximity to the door was such that he had to step backward to avoid the impact. Had D.H. not maneuvered away from the door, the trier of fact could reasonably conclude that an "injury * * * regardless of its gravity or duration" would have occurred. *See* R.C. 2901.01(A)(3). Under the facts of this case, and viewing this testimony in the light most favorable to the State, a trier of fact could reasonably conclude that T.T., with whom Mr. Parsons was complicit, attempted to inflict physical harm upon D.H.

{¶16} Mr. Parsons' second assignment of error is overruled.

### ASSIGNMENT OF ERROR NO. 3

PARSON[S'] CONVICTION FOR AGGRAVATED BURGLARY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶17} In his third assignment of error, Mr. Parsons has argued that his conviction is against the manifest weight of the evidence. This Court does not agree.

{¶18} When considering whether a conviction is against the manifest weight of the evidence, this Court must:

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶19} Mr. Parsons' first argument in support of this assignment of error is premised upon the assumption that this Court would sustain his first assignment of error. In other words,

he has argued that his conviction is against the manifest weight of the evidence "[g]iven the role of 'officer conduct' testimony that was not [*sic*] presented for the 'truth of the matter asserted.'" Because this Court has overruled Mr. Parsons' first assignment of error, this portion of his manifest weight argument is moot.

{¶20} Mr. Parsons has also argued that his conviction is against the manifest weight of the evidence because D.H. testified that he was not afraid during the incident. Based on this testimony about D.H.'s subjective reaction to the events, Mr. Parsons suggests that the State could not prove that he inflicted, or attempted or threatened to inflict, physical harm upon D.H. On this point, however, the testimony was not as unequivocal as Mr. Parsons represents it to have been. D.H. testified that after T.T. forced entry into the apartment with Mr. Parsons and N.W., he was "nervous, of course * * * [and] scared." He explained that he was ready to defend himself with the knife that he had retrieved before the men knocked on his door. D.H. also testified that when he denied that he was "José," T.T. told him that he was "lucky" because otherwise, he was going to be stabbed. The officer who responded to D.H.'s apartment testified that D.H. was "still, obviously, shaken" and was initially reluctant to report the incident because he was afraid of retaliation from the perpetrators.

{¶21} Mr. Parsons' argument based on the testimony regarding D.H.'s state of mind focuses on whether he experienced an implicit threat of physical harm. In that context, a victim's testimony regarding the subjective experience of fear can be relevant. *Compare State v. Tillison*, 9th Dist. Wayne No. 18AP0047, 2019-Ohio-1395, ¶ 11. In this case, however, it was not merely the implicit *threat* of physical harm that was at issue, but an *attempt* to inflict physical harm. In that respect, D.H. testified that first Mr. Parsons, then N.W., knocked on his apartment door, and T.T. forced the door open while he was in close enough proximity to it that he had to

back away to avoid the impact. D.H.'s subjective reaction to the incident does not undermine the evidence demonstrating an attempt to inflict physical harm, and Mr. Parsons' conviction is not against the manifest weight of the evidence.

{¶22} Mr. Parsons' third assignment of error is overruled.

III.

{¶23} Mr. Parsons' assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

TEODOSIO, P. J.
CARR, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

JOHN D. TOTH, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and DANIELLE BEARDEN, Assistant Prosecuting Attorney, for Appellee.