**[Cite as *State v. Shealy*, 2020-Ohio-1019.]**

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

STATE OF OHIO

    Appellee

v.

DAMARCUS L. SHEALY

    Appellant

C.A. No.     29393

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR-2018-05-1710-B

DECISION AND JOURNAL ENTRY

Dated: March 18, 2020

CARR, Judge.

{¶1} Defendant-Appellant Demarcus Shealy appeals the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} On April 16, 2018, Demarcus Shealy was staying at his cousin Jimmy's apartment on East Exchange Street in Akron. The victim, who was a friend of Jimmy's, came to visit. Demarcus Shealy and the victim got into an argument over a small amount of money that was owed the victim. The victim pushed Demarcus Shealy onto a couch and put his hands around Demarcus Shealy's neck. After a few minutes, the victim let Demarcus Shealy up. Jimmy then told Demarcus Shealy that he was not welcome at the apartment any longer and that he should get his belongings. Demarcus Shealy left the apartment building and the victim did not follow.

{¶3} Demarcus Shealy was very upset after the altercation with the victim and felt he had been disrespected. Demarcus Shealy called his cousin Jaquana Shealy. Jaquana Shealy

arrived in a blue Dodge Neon along with four other people. The other individuals were ultimately identified as Demarcus Shealy's cousin, Bruce Shealy, Marquest Fisk, Samantha Lamp, and Lavon Rankin. Jimmy heard Demarcus Shealy yelling at the victim to come out.

{¶4} The victim went down the hallway in the apartment building and opened the back door. Demarcus Shealy struck the victim with a brick. Jimmy fled to a nearby grocery store to call 911. Three African American males proceeded down the hallway after the victim towards Jimmy's apartment. One of those individuals, Rankin, shot the victim in the abdomen. The victim later died from the gunshot wound.

{¶5} Demarcus Shealy was indicted in June 2018 on one count of murder in violation R.C. 2903.02(B), (D) and 2929.02(B), four counts of felonious assault, and one count of obstructing justice. Firearm specifications accompanied the murder charge and two of the felonious assault counts.

{¶6} Demarcus Shealy entered a guilty plea to reduced charges and a pre-sentence investigation ("PSI") report was prepared. However, prior to sentencing, Demarcus Shealy moved to withdraw his plea. Following a hearing, his motion was granted.

{¶7} The matter then proceeded to a jury trial. The jury found Demarcus Shealy guilty of the offenses charged. The trial court determined that two of the felonious assault counts merged with the murder count. The State elected to have Demarcus Shealy sentenced on the murder charge. The trial court also concluded that the remaining two felonious assault counts merged and the State elected to have Demarcus Shealy sentenced on the count for a violation of R.C. 2903.11(A)(2), (D)(1)(a). The trial court sentenced Demarcus Shealy to a total term of 26 years to life in prison.

{¶8} Demarcus Shealy has appealed, raising four assignments of error for our review.

II.

## ASSIGNMENT OF ERROR I

THE VERDICT OF THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

{¶9} Demarcus Shealy argues in his first assignment of error that the verdicts for murder, felonious assault with a firearm, and the firearm specifications are against the manifest weight of the evidence. Essentially, Demarcus Shealy challenges the verdicts on which the State proceeded under a theory of complicity. Demarcus Shealy maintains that the evidence does not support that he aided and abetted Rankin in shooting the victim.

{¶10} In determining whether a criminal conviction is against the manifest weight of the evidence,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

State v. Otten, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." State v. Thompkins, 78 Ohio St.3d 380, 387 (1997), quoting Tibbs v. Florida, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. Otten at 340.

{¶11} R.C. 2923.03(A)(2) provides that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense[.]" "Whoever violates [R.C. 2923.03] is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of

complicity may be stated in terms of this section, or in terms of the principal offense." R.C. 2923.03(F).

{¶12} "A conviction based on complicity by aiding and abetting under R.C. 2923.03(A)(2) must be based on evidence showing 'that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal.' This intent may be inferred from the surrounding circumstances." *State v. Parsons*, 9th Dist. Lorain No. 18CA011328, 2019-Ohio-5021, ¶ 13, quoting *State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus.

{¶13} On April 16, 2018, Demarcus Shealy was staying at his cousin Jimmy's apartment. When Demarcus Shealy returned to the apartment from the store, he briefly saw Jaquana and Bruce Shealy, Rankin, and Fisk there. Jaquana Shealy had brought the group over. Shortly after Demarcus Shealy returned to the apartment, the group left. Not long after, the victim came over to visit Jimmy. Demarcus Shealy and the victim got into an argument over a small sum of money that Demarcus Shealy owed the victim. The victim pushed Demarcus Shealy on the couch and put his hands around Demarcus Shealy's neck. Minutes later, the victim let Demarcus Shealy up. Jimmy told Demarcus Shealy he was no longer welcome in the apartment. Demarcus Shealy left the apartment building and went on the back porch to call his cousin Jaquana Shealy. The victim did not pursue Demarcus Shealy.

{¶14} As Jimmy's neighbor was returning from the store, he observed Demarcus Shealy outside on the phone. Demarcus Shealy appeared upset. The neighbor was concerned and asked Demarcus Shealy if he was alright. Demarcus Shealy responded that he was. The neighbor went inside and heard Demarcus Shealy talking about how someone disrespected him.

{¶15} Video surveillance from a nearby church revealed that a blue Dodge Neon approached the apartment building. Five people got out of the car: three African American males, an African American female, and a Caucasian female. The people in the car were subsequently identified as Jaquana Shealy, Bruce Shealy, Lamp, Fisk, and Rankin. The individuals walked from the car, to the building, and back to the car over a time period of approximately two and one half minutes.

{¶16} Jimmy testified that Demarcus Shealy was yelling profanity for three to four minutes, demanding that the victim come outside. Jimmy begged the victim not to go. The victim left the apartment, went down the hall, and opened the back door. There was testimony that that door was locked. A second after opening the door, the victim was hit with a brick. While Jimmy did not see who did it, Demarcus Shealy would later admit to the police that he struck the victim with the brick. Jimmy proceeded to run to the nearby store to call 911.

{¶17} Jimmy's neighbor heard the commotion in the hallway and opened his door. He observed three African American males in the hallway near Jimmy's apartment, one of whom had a gun. When the neighbor saw the gun, he closed the door. The neighbor then heard two gunshots. The neighbor did not know if Demarcus Shealy was one of the people in the hallway but he was certain he was not the person holding the gun. The people that came in the car fled in the car and Demarcus Shealy fled on foot.

{¶18} When police and paramedics arrived on the scene, they found that the victim's face was bleeding and that he had been shot in the abdomen. The victim was taken to the hospital but subsequently died.

{¶19} Sergeant Matt Eckart with the Akron Police Department Crime Scene Unit testified concerning what was found at the apartment building. Blood stains were discovered in

the hallway, on the door of Jimmy's apartment, and inside the apartment. Inside the apartment, police recovered a blood-stained rug that contained a shell casing, a brick, and a cell phone. Blood on the brick was later determined to be consistent with the victim's.

{¶20} The medical examiner, Dr. Lisa Kohler, testified that the victim died from a gunshot wound to the abdomen. The victim had three lacerations on his head, which were non-life-threatening injuries. Dr. Kohler opined that the head injuries were consistent with being hit with a brick and that the victim had been struck multiple times. Dr. Kohler also testified that the brick could cause death.

{¶21} Detective Aron Hanlon of the Akron Police Department testified concerning the investigation into the victim's death. Detective Hanlon discussed the lengthy process that was involved in learning the identities of the five people in the car. Once the car that Jaquana Shealy drove was identified, police learned that it had been stopped in the early morning of April 17, 2018. At the time, Jaquana Shealy, Lamp, and Rankin were in the vehicle.

{¶22} Detective Hanlon spoke with Demarcus Shealy three times over the course of the investigation. Ultimately, Demarcus Shealy admitted several things by the last interview. Demarcus Shealy admitted to staying with Jimmy and to arguing with the victim over an unpaid loan. Demarcus Shealy acknowledged that the victim pushed Demarcus Shealy onto the couch, put his hands on Demarcus Shealy's neck, and that the victim then let Demarcus Shealy up. Demarcus Shealy never indicated that the victim punched Demarcus Shealy or had a weapon.

{¶23} Demarcus Shealy then told Detective Hanlon that he called Jaquana Shealy to come get him. Demarcus Shealy admitted to being angry at the way the victim had treated him. When Jaquana Shealy arrived, five people got out of the vehicle. Demarcus Shealy indicated that he and the group of five people ended up at the back of the apartment building. When the

door to the apartment building opened, Demarcus Shealy hit the victim with a brick. He admitted to proceeding down the hallway with Rankin and Bruce Shealy and seeing Rankin shoot the victim. Demarcus Shealy fled on foot while the others left in the car.

{¶24} Demarcus Shealy also testified in his defense and told a different version of events than he had previously told police. Demarcus Shealy testified that, after the initial confrontation with the victim, he called Jaquana Shealy to pick him up. When she arrived, she came to the back of the building and began asking if he was alright. Demarcus Shealy indicated that he then explained the situation to Jaquana Shealy and the people inside the building must have mistook that for him wanting the victim to come outside. Demarcus Shealy heard the victim say, "You can go get whoever you want to[.]" Demarcus Shealy averred that the victim then came "flying through the back door charging at [him], and that's when [he] hit [the victim] with the rock." Demarcus Shealy claimed that the victim had "his hand trying to grab [Demarcus Shealy] and that's when [he] struck [the victim]." Demarcus Shealy testified that he threw the brick at the victim and it hit him in the face. This caused the victim to "back[] off a little bit." Demarcus Shealy testified that, prior to the victim charging through the door, Demarcus Shealy picked up the brick because he was mad and wanted revenge. Demarcus Shealy testified that he did not enter the building and instead ran from the building and down the road. Demarcus Shealy denied seeing Rankin, denied knowing him, denied talking to him, and essentially denied any involvement in the shooting of the victim. Demarcus Shealy also denied seeing a gun and denied seeing anyone with Jaquana Shealy. Demarcus Shealy testified that what he told police about witnessing Rankin shoot the victim was a lie and that he lied because he was afraid and because he wanted to make sure that the police got the right person for shooting the victim.

{¶25} After considering the totality of the evidence, we cannot say that Demarcus Shealy has demonstrated that the verdicts at issue are against the manifest weight of the evidence. From the evidence, the jury could have reasonably believed that, following Demarcus Shealy's initial confrontation with the victim, Demarcus Shealy was angry and wanted revenge and that was why he contacted Jaquana Shealy. In fact, Demarcus Shealy himself admitted to picking up the brick because he wanted revenge. Further, instead of leaving when Jaquana Shealy arrived at the apartment building, Demarcus Shealy remained outside the building, and, according to Jimmy, was yelling at the victim for three to four minutes to come outside. There was also evidence that Jaquana and Bruce Shealy, Lamp, Rankin, and Fisk all proceeded to the back of the building and that when the victim opened the door, Demarcus Shealy struck the victim with a brick. While there was no testimony that Demarcus Shealy talked to Rankin about shooting the victim, there was evidence that Demarcus Shealy followed Rankin and Bruce Shealy down the hallway and was present when Rankin shot the victim. Demarcus Shealy then fled on foot and did not get into the car that he had supposedly requested merely for a ride. Considering the evidence and timing of events as a whole, the jury could have reasonably inferred that Demarcus Shealy contacted Jaquana Shealy to bring reinforcements to the apartment building so that Demarcus Shealy could get revenge on the victim for behavior Demarcus Shealy found to be disrespectful to him. *See Parsons*, 2019-Ohio-5021, at ¶ 13, quoting *Johnson*, 93 Ohio St.3d 240 at syllabus. We note there was no evidence presented that any of the people in the car had any independent reason to seek to harm the victim. We cannot say that the verdicts founded upon a theory of complicity were against the manifest weight of the evidence.

{¶26} While Demarcus Shealy testified at trial and denied any involvement in the planning or execution of the shooting, the jury was not unreasonable in viewing his testimony with skepticism. Demarcus Shealy's trial testimony was drastically different than the information that he previously provided to police. We remain mindful that "the trier of fact is in the best position to determine the credibility of witnesses and evaluate their testimony accordingly." (Internal quotations and citation omitted.) *State v. Lopane*, 9th Dist. Summit Nos. 29245, 29246, 2019-Ohio-4660, ¶ 21. "[T]he trier of fact is free to believe all, some, or none of a witness' testimony." *State v. Slater*, 9th Dist. Summit No. 28049, 2016-Ohio-7766, ¶ 24.

{¶27} Demarcus Shealy has not demonstrated that the verdicts at issue are against the manifest weight of the evidence. Therefore, his first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IMPOSING SENTENCE UPON APPELLANT[.]

{¶28} Demarcus Shealy argues in his second assignment of error that the trial court erred in sentencing him. Specifically, he asserts that the trial court erred in relying on the PSI report that was prepared after his initial guilty plea, which was later withdrawn. Additionally, Demarcus Shealy maintains that the trial court erred in imposing consecutive sentences.

{¶29} "In reviewing a felony sentence, [t]he appellate court's standard for review is not whether the sentencing court abused its discretion." *State v. Thomson*, 9th Dist. Summit No. 28900, 2018-Ohio-5322, ¶ 6, quoting *State v. Boatright*, 9th Dist. Summit No. 28101, 2017-Ohio-5794, ¶ 44. "[A]n appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that: (1) the record does not support the trial court's findings under relevant statutes, or (2) the sentence is otherwise contrary to law." *Thomson* at ¶ 6, quoting *Boatright* at ¶ 44. "Clear and convincing evidence is that which will

produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Thomson* at ¶ 6, *Boatright* at ¶ 44.

### PSI Report

**{¶30}** Demarcus Shealy asserts that the trial court should have ordered a new PSI report after trial and erred in relying on the one that was prepared after his initial guilty plea.

**{¶31}** After the trial, the following discussion occurred:

[The trial court:] Mr. Shealy, the jury having found you guilty of all counts in the indictment as referring to you I'm hereby revoking your bond and I am prepared to proceed to sentencing based on the fact that I had previously ordered a presentence investigation with a victim impact statement that was provided to me about a month ago when you entered a plea prior to withdrawing that plea. Any objection, [defense counsel]?

[Defense counsel:] Well, Your Honor –

[The trial court:] If you want some time, you know, I know there's some arguments with regards to merger and those types of things, so if you want a couple days I'm willing to do that, but I'm not going – I guess what I'm getting at is I'm not ordering a presentence investigation.

[Defense counsel:] I understand, Your Honor. One has already been completed. I had an opportunity to review that as well, Your Honor. I would ask for an opportunity to review the merger aspects of this case.

The trial court then set a date for sentencing.

**{¶32}** Accordingly, Demarcus Shealy did not object to the trial court's use of the original PSI report despite being given a clear opportunity to do so even prior to sentencing. Additionally, Demarcus Shealy did not raise this issue at the sentencing hearing. Thus, we conclude that he has forfeited this issue, and, because he has not argued plain error, we decline to further consider it. *See State v. Simmons*, 3d Dist. Allen No. 1-14-45, 2015-Ohio-1594, ¶ 6, 13-15; *see also State v. Dent*, 9th Dist. Summit No. 20907, 2002-Ohio-4522, ¶ 6.

**Consecutive Sentences**

{¶33} Demarcus Shealy additionally contends that the trial court erred in sentencing him to consecutive sentences.

{¶34} R.C. 2929.14(C)(4) states:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶35} Demarcus Shealy does not appear to dispute that the trial court made the required findings at the sentencing hearing and in the journal entry. Instead, he seems to argue that the evidence does not support the trial court's findings.

{¶36} It is apparent that the trial court, despite only being required by the statute to make one of the three findings in R.C. 2929.14(C)(4)(a)-(c), *see* R.C. 2929.14(C)(4), found that all three applied. Accordingly, if any one of the findings is supported by the record, Demarcus Shealy cannot succeed in his argument. The trial court concluded, inter alia, that Demarcus Shealy's history of criminal conduct demonstrated that consecutive sentences were necessary to protect the public from future crime. *See* R.C. 2929.14(C)(4)(c). On appeal, Demarcus Shealy

asserts that he had no prior felony convictions or history of violence. However, this argument ignores Demarcus Shealy's juvenile record that is detailed in the PSI report, which included offenses which would be felonies if committed by an adult. Demarcus Shealy has not argued that the trial court could not consider his juvenile record in determining an appropriate sentence. *See State v. Dover*, 2d Dist. Clark Nos. 2018-CA-107, 2018-CA-108, 2019-Ohio-2462, ¶ 11-14. Given the foregoing, we cannot say that Demarcus Shealy has demonstrated by clear and convincing evidence that the trial court's findings with respect to consecutive sentences are unsupported by the record. *See Thomson*, 2018-Ohio-5322, at ¶ 6

{¶37} Demarcus Shealy's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED WHEN IT OVERRULED A TIMELY DEFENSE MOTION FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29 AS THERE WAS NOT SUFFICIENT EVIDENCE PRESENTED BY THE STATE OF OHIO TO ESTABLISH A PRIMA FACIE CASE OF OBSTRUCTING JUSTICE TO WARRANT THE CASE BEING SUBMITTED TO THE JURY.

{¶38} Demarcus Shealy argues in his third assignment of error that the trial court erred in denying his Crim.R. 29 motion on the charge of obstructing justice.

{¶39} Crim.R. 29(A) provides:

The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

{¶40} When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

{¶41} Demarcus Shealy was found guilty of violating R.C. 2921.32(A)(5). R.C. 2921.32(A)(5) states that "[n]o person, with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of another for crime or to assist another to benefit from the commission of a crime, and no person, with purpose to hinder the discovery, apprehension, prosecution, adjudication as a delinquent child, or disposition of a child for an act that if committed by an adult would be a crime or to assist a child to benefit from the commission of an act that if committed by an adult would be a crime, shall * * * [c]ommunicate false information to any person[.]" "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). "Section 2921.32(A)(5) simply requires that the false statement be made with the intent to hamper the investigation of the authorities, and not that it result in an actual delay." *State v. Miller*, 9th Dist. Lorain No. 06CA009064, 2008-Ohio-508, ¶ 10.

{¶42} "The privilege [against self-incrimination] * * * cannot be extended to include false oral statements made to mislead law enforcement officers." *State v. Bailey*, 71 Ohio St.3d 443, 447 (1994). Thus, "[a] citizen may decline to answer the question, or answer it honestly,

but he cannot with impunity knowingly and willfully answer with a falsehood." (Internal quotations and citations omitted.) *Id.*

**{¶43}** Demarcus Shealy asserts that any alleged false statements he made would have not assisted another person and were in his own self-interest. Additionally, he maintains that the statements were not made with the purpose to hamper or impede law enforcement. Finally, he asserts that his statements should be excluded from prosecution under the "exculpatory no" exception.

### General Sufficiency Analysis of the Obstructing Justice Charge

**{¶44}** The State based this charge on statements Demarcus Shealy made to law enforcement that were subsequently contradicted by his later statements or other evidence. Demarcus Shealy spoke to Detective Hanlon on three occasions, first on the phone, and then twice in person.

**{¶45}** During the initial conversation, Demarcus Shealy told Detective Hanlon that Jaquana Shealy was the only individual in the car. Detective Hanlon testified that this impeded the investigation. He stated that "[they] had spent hours and hours trying to locate people and hours and hours interviewing them again to try to identify everyone who was there." Detective Hanlon further averred that, at the time of the initial interview with Demarcus Shealy, while police knew there were five people in the car, they did not know who the people were.

**{¶46}** We conclude that the State presented sufficient evidence to withstand a Crim.R. 29 motion with respect to the obstructing justice charge. Demarcus Shealy's statement to Detective Hanlon that Jaquana Shealy was the only individual in the car was demonstrated to be false by Demarcus Shealy's later statements to police and by security footage from a nearby church.

**{¶47}** As to Demarcus Shealy's intent, "[i]ntent can be inferred from the totality of the circumstances including circumstantial evidence, which has the same probative value as direct evidence. Therefore, the intent behind false communications can be gathered from the evidence as a whole, including rational inferences." (Internal citation omitted.) *State v. Heckathorn*, 7th Dist. Columbiana No. 17 CO 0011, 2019-Ohio-1086, ¶ 57. Further, "a person can have multiple purposes or purposely do one act in order to accomplish another act. A person can specifically intend to hinder an investigation of another for the additional purpose of hindering the investigation of [himself] and still have purpose to hinder the investigation of the other person." *Id.* at ¶ 60. "This is especially true in a case involving complicity where the investigations are linked. The fact that a person has an ulterior purpose to help oneself does not eliminate the specific intent to hinder the investigation of another." *Id.* Given that at least one of the members of the group whom Demarcus Shealy failed to identify was his cousin Bruce Shealy, and Bruce Shealy was one of the individuals later identified as being present when Rankin shot the victim, it can be reasonably inferred that Demarcus Shealy's purpose in failing to disclose the identities of the other people in the car was, at least in part, to hinder their discovery by authorities to prevent them from being implicated in the crimes. *See State v. Thomas*, 9th Dist. Summit No. 27435, 2015-Ohio-2379, ¶ 16; *see also Heckathorn* at ¶ 60. Demarcus Shealy has not detailed how identifying the other individuals in the car would have been against his self-interest. *See* App.R. 16(A)(7).

### "Exculpatory No" Exception

**{¶48}** Demarcus Shealy's next claims that the "exculpatory no" exception requires reversal of his conviction. The "exculpatory no" exception originated in federal case law. *Bailey*, 71 Ohio St.3d at 447. "Under this exception, general negative and exculpatory responses

made by a subject of a criminal investigation in reply to questions directed to him by investigators [wa]s not a crime under federal law." *Id.* at 447-448. However, the United States Supreme Court subsequently rejected the exception. *See Brogan v. United States*, 522 U.S. 398 (1998). The Ohio Supreme Court has yet to rule on the applicability of the exception under Ohio law. *See State v. Velez*, 9th Dist. Lorain No. 13CA010370, 2014-Ohio-4269, ¶ 36 (Carr, J., concurring in part, and dissenting in part).

{¶49} Even if we were to conclude that the "exculpatory no" exception is applicable under Ohio law, we cannot say that Demarcus Shealy has demonstrated its application to the facts of this case. While some of the false statements pointed to by the State as a basis for the charge perhaps might fall within the exception, we conclude that at least one does not. We cannot say that when Demarcus Shealy identified Jaquana Shealy as the only individual in the car he provided a "general negative and exculpatory response[.]" *Bailey* at 447. Thus, we fail to see how the exception would apply to this case. More importantly, Demarcus Shealy has not explained how such a statement would fit within the exception. *See* App.R. 16(A)(7).

{¶50} Demarcus Shealy's third assignment of error is overruled.

### ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERR[ED] BY FAILING TO INSTRUCT THE JURY ON SELF DEFENSE[.]

{¶51} Demarcus Shealy argues in his fourth assignment of error that the trial court erred in failing to instruct the jury on self-defense.

{¶52} "Requested jury instructions should ordinarily be given if they are correct statements of law, if they are applicable to the facts in the case, and if reasonable minds might reach the conclusion sought by the requested instruction." *State v. Adams*, 144 Ohio St.3d 429,

2015-Ohio-3954, ¶ 240. "An appellate court reviews a trial court's refusal to give a requested jury instruction for abuse of discretion." *Id.*

{¶53} A defendant has the burden of establishing the affirmative defense of self-defense by a preponderance of the evidence.[1] *State v. Reed*, 9th Dist. Summit No. 27755, 2016-Ohio-5123, ¶ 15; *see also* former R.C. 2901.05(A). "Where a defendant has used deadly force, he must prove that '(1) [he] was not at fault in creating the violent situation, (2) [he] had a bona fide belief that [he] was in imminent danger of death or great bodily harm and that [his] only means of escape was the use of force, and (3) that [he] did not violate any duty to retreat or avoid the danger.'" *State v. Bitting*, 9th Dist. Summit No. 29238, 2019-Ohio-2304, ¶ 9, quoting *State v. Goff*, 128 Ohio St.3d 169, 2010-Ohio-6317, ¶ 36.

{¶54} "[A] trial court need only instruct the jury on self-defense if the defendant has introduced sufficient evidence, which, if believed, would raise a question in the minds of reasonable [jurors] concerning the existence of such issue." *Bitting* at ¶ 9, quoting *Reed*, 2016-Ohio-5123, at ¶ 15, quoting *State v. Hatfield*, 9th Dist. Summit No. 23716, 2008-Ohio-2431, ¶ 8. "Evidence is sufficient where a reasonable doubt of guilt has arisen based upon a claim of self-defense. If the evidence generates only a mere speculation or possible doubt, such evidence is insufficient to raise the affirmative defense, and submission of the issue to the jury will be unwarranted." *Bitting* at ¶ 9, quoting *State v. Melchior*, 56 Ohio St.2d 15, 20 (1978).

---

[1] Demarcus Shealy's conduct occurred before the March 28, 2019 effective date of R.C. 2901.05(B) "which places the burden on the State to prove beyond a reasonable doubt that the force was not used in self-defense when there is 'evidence presented that tends to support that the [defendant] used the force in self-defense * * *.'" *State v. Bonaparte*, 2d Dist. Clark No. 2018-CA-61, 2019-Ohio-2030, ¶ 63, fn. 9. Given the foregoing, and the fact that Demarcus Shealy has made no argument that the current version is applicable, we will apply the former version of the statute.

{¶55} We cannot say that the trial court abused its discretion in failing to instruct the jury on self-defense even if we were to take Demarcus Shealy's own testimony as true. While there is an argument to be made that Demarcus Shealy may have been acting in self-defense in the initial confrontation with the victim during which the victim pushed Demarcus Shealy onto the couch, Demarcus Shealy was not charged with any crime based upon that encounter. Demarcus Shealy himself testified that when that confrontation ended, he left the apartment building and went out on the back porch. He testified that, after the encounter, he did not call the police after the victim assaulted him because "it was done and over it." Nonetheless, Demarcus Shealy admitted to being upset. He testified that, "[t]ruthfully, I was a little more upset, like, this person came in my home pretty much and did this to me. Like, why should I have to run away from my home? Like, he should have been the one that had to leave, but instead he gonna try to come back at me again." Demarcus Shealy then testified that he called Jaquana Shealy to pick him up. However, instead of waiting near the front of the building for his ride, Demarcus Shealy stayed on the back porch. And, instead of leaving the scene when his ride arrived, he picked up a brick. Demarcus Shealy testified that he picked up the brick because he was "mad" and "probably wanted to get some give-back[.]" When asked if that meant he wanted revenge, Demarcus Shealy responded, "Yeah." According to Demarcus Shealy, the victim then came "flying through the back door charging at [him], and that's when [Demarcus Shealy] hit [the victim] with the rock." The victim "had his hand trying to grab [Demarcus Shealy] and that's when [he] struck [the victim]."

{¶56} We cannot say that the trial court abused its discretion in denying the self-defense instruction. Even when the testimony is limited to Demarcus Shealy's version of events, an instruction on self-defense was not warranted. If the totality of the evidence is considered, there

was even more evidence to support that Demarcus Shealy instigated the second encounter that ultimately resulted in the victim's death. Jimmy testified that Demarcus Shealy was calling for the victim to come outside for three to four minutes before the victim opened the door. While Demarcus Shealy testified that Jimmy misheard Demarcus Shealy, Demarcus Shealy also testified that, while the victim was still in the apartment, he heard him say, "You can go get whoever you want to[.]" That statement could lead to the reasonable inference that Demarcus Shealy was trying to instigate another encounter. Demarcus Shealy did not demonstrate that he presented sufficient evidence to warrant a self-defense instruction. *See Bitting*, 2019-Ohio-2304, at ¶ 9, quoting *Reed*, 2016-Ohio-5123, at ¶ 15, quoting *Hatfield*, 2008-Ohio-2431, at ¶ 8; *see also Reed* at ¶ 16, citing *State v. Nichols*, 4th Dist. Scioto No. 01CA2775, 2002 WL 126973, *3 (Jan. 22, 2002).

{¶57} Demarcus Shealy's fourth assignment of error is overruled.

III.

{¶58} Demarcus Shealy's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

TEODOSIO, P.J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

ANGELA M. KILLE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.